# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 25-1032

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; DISABILITY RIGHTS SOUTH CAROLINA; JUSTICE 360,

     Plaintiffs–Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE; EDEN HENDRICK, in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice,

     Defendants–Appellees.

On Appeal from the United States District Court for the
District of South Carolina, Rock Hill Division, No. 0:22-cv-01338-JDA-PJG,
Hon. Jacquelyn D. Austin

## DEFENDANTS–APPELLEES' OPENING BRIEF

Robert E. Tyson, Jr.
Beth B. Richardson
Sarah C. Frierson
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com
*Counsel for Defendants–Appellees*

CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Fourth Circuit Rules, Defendants-Appellees—as a state agency and its executive director—affirm they are not publicly held corporations, other publicly held entities, or trade associations; they do not issue shares to the public and have no parent companies, subsidiaries, or affiliates that have issued shares to the public in the Unites States or abroad; no publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation; and the case does not arise out of a bankruptcy proceeding.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................... iii

INTRODUCTION ................................................................... 1

JURISDICTIONAL STATEMENT ............................................ 3

COUNTERSTATEMENT OF ISSUES ...................................... 3

COUNTERSTATEMENT OF THE CASE .................................. 4

STANDARD OF REVIEW ...................................................... 7

SUMMARY OF ARGUMENT .................................................. 8

ARGUMENT ...................................................................... 10

I.    Appellants lack standing to bring constitutional or statutory disability claims based on alleged injuries of "South Carolina youth." .................................. 10

      A.    DRSC lacks associational standing. ................................... 12

            1.    DRSC lacks an "indicia of membership." ................................ 13

            2.    *Summers* prevents DRSC from litigating claims on behalf of unnamed juveniles. ................................. 14

            3.    Appellants' claims and relief require individual participation. ................................. 19

      B.    Appellants also lack organizational standing. ................................. 21

II.   The district court correctly found DRSC's associational claims moot. ........ 25

      A.    The district court correctly found no exceptions to mootness apply. ................................. 33

III.   The district court correctly found Appellants failed to state plausible Section 1983 claims based on organizational standing because they failed to allege how their own Fourteenth Amendment rights had been violated. ................36

    A.   Even so, Appellants lack statutory standing under Section 1983 to bring organizational claims for alleged injuries to South Carolina youth....37

        1.   Appellants' arguments contradict the plain language of Section 1983, policy, and precedent. ....................................................40

IV.   The district court correctly found Appellants failed to state plausible organizational claims for relief under the ADA, Rehabilitation Act, and IDEA. ....................................................................................................47

    A.   Appellants waived any challenge to dismissal of their organizational statutory disability claims, which was not based on prudential standing. ............................................................................47

CONCLUSION .............................................................................................51

## CASES

*A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356 (4th Cir. 2008).......................51

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011).........................8

*Abraugh v. Altimus*, 26 F.4th 298 (5th Cir. 2022) .................................................45

*Alexander S. ex rel. Bowers v. Boyd*, 876 F. Supp. 773 (D.S.C. 1995)..................40

*Allee v. Medrano*, 416 U.S. 802 (1974).................................................................44

*Andre Long v. SCDJJ*, No. 2022-CP-40-02216
(S.C. Ct. Comm. Pl. filed Apr. 28, 2022) ...............................................................42

*Andrews v. Neer*, 253 F.3d 1052 (8th Cir. 2001)...................................................41

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................8, 17

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health
& Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241 (5th Cir. 1994)............13, 24, 25

*Battle v. Ledford*, 912 F.3d 708 (4th Cir. 2019) ....................................................44

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................8

*Benham v. City of Charlotte*, 635 F.3d 129 (4th Cir. 2011) ....................................7

*Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318 (1977) ................................38

*Bowman v. Stirling*, 45 F.4th 740 (4th Cir. 2022) .................................................24

*Brown v. Town of Cary*, 706 F.3d 294 (4th Cir. 2013)...........................................45

*Bryant v. Stephan*, 17 F.4th 513 (4th Cir. 2021) (en banc).....................................24

*Calvin v. Conlisk*, 534 F.2d 1251 (7th Cir. 1976)..................................................39

*Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*,
407 S.C. 67, 753 S.E.2d 846 (2014) ........................................................45

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*,
868 F.3d 104 (2d Cir. 2017)...................................................................44

*CGM, LLC v. Bellsouth Telecomms., Inc.*, 664 F.3d 46 (4th Cir. 2011) ................38

*Coal. for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1 (D.D.C. 2010) .......15

*Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262 (2019)....................41

*Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236 (4th Cir. 1989)..............................42

*Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11 (D.D.C. 2020)............38

*Craig v. Boren*, 429 U.S. 190 (1976)........................................................................44

*Damico v. California*, 389 U.S. 416 (1967)..............................................................44

*Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019)...................................................44

*Disability Rts. Pa. v. Pa. Dep't of Human Servs.*, No. 1:19-CV-737,
2020 U.S. Dist. LEXIS 53415 (M.D. Pa. Mar. 27, 2020) ........................13

*Do No Harm v. Pfizer, Inc.*, 96 F.4th 106 (2d Cir. 2024)........................................16

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ..........................42

*Doe v. Porter-Gaud Sch.*, No. 2:22-cv-02093-DCN,
2023 WL 122028 (D.S.C. Jan. 6, 2023) ....................................................37

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999)...................................................14, 17

*Dunn v. Dunn*, 219 F. Supp. 3d 1163 (M.D. Ala. 2016) .........................................32

*E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*,
213 F.3d 175 (4th Cir. 2000) ....................................................17, 22, 27

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435 (4th Cir. 2011) .......8

v

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) ..................................42

*Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) ......................................................7

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ........................9, 22, 23, 36

*Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*,
11 F.4th 1266 (11th Cir. 2021) ..................................................................44

*Freilich v. Upper Chesapeake Health*, 313 F.3d 205 (4th Cir. 2002) ....................49

*Friends of Georges, Inc. v. Mulroy*, No. 2:23-cv-02163-TLP-tmp,
2023 WL 3790583 (W.D. Tenn. June 1, 2023) ........................................14

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) ....................................11

*Gerstein v. Pugh*, 420 U.S. 103 (1975)....................................................................34

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)....................9, 21, 22, 23, 24

*Heffernan v. City of Paterson*, 578 U.S. 266 (2016) ..............................................39

*Howerton v. Fletcher*, 213 F.3d 171 (4th Cir. 2000)........................................37, 41

*Hugger v. Rutherford Inst.*, 94 F. App'x 162 (4th Cir. 2004) ................................16

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ....8, 12, 13, 14, 26

*Incumaa v. Ozmint*, 507 F.3d 281 (4th Cir. 2007)................................28, 30, 33, 35

*Inmates v. Owens*, 561 F.2d 560
(4th Cir. 1977)................................................ 2, 7, 9, 19, 27, 28, 30, 36, 37, 41, 46

*Jackson v. Sargent*, 394 F. Supp. 162 (D. Mass. 1975)..........................................39

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
78 F.4th 622 (4th Cir. 2023) ........................................................................3

*Jonathan Paz v. SCDJJ*, No. 2022-CP-40-02144

(S.C. Ct. Comm. Pl. filed Apr. 25, 2022) ................................................42

*Jones v. State*, 440 S.C. 14, 889 S.E.2d 590 (2023) ................................24

*Just. 360 v. Stirling*, 42 F.4th 450 (4th Cir. 2022)............................11, 51

*June Med. Servs., LLC v. Russo*, 140 S. Ct. 2103 (2020).......................42

*Kowalski v. Tesmer*, 543 U.S. 125 (1991) .........................................43, 46

*Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC*, 713 F.3d 187 (4th Cir. 2013) ......................................17

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) .........................................23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)......................................10, 38, 39, 44, 46

*Lewis v. Casey*, 518 U.S. 343 (1996).........................................20, 28, 44

*Martin v. Duffy*, 858 F.3d 239 (4th Cir. 2017)....................................40, 48

*Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246 (4th Cir. 1991)..........................................................................21

*Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548 (6th Cir. 2021) ............35

*Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006).........................................11

*Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921 (7th Cir. 2013) ....................................................30

*Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007).................14

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)................................44

*Moore v. Frazier*, 941 F.3d 717 (4th Cir. 2019)......................................11

*Moore v. Stirling*, 436 S.C. 207, 871 S.E.2d 423 (2022).........................24

*Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599 (4th Cir. 2012) ...........31

*MSP Recovery Claims, Series Ltd. Liab. Co. v. Lundbeck Ltd. Liab. Co.*, 130 F.4th 91 (4th Cir. 2025) ...................16

*MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89 (D.D.C. 2024) .........................16

*Munsell v. Dep't of Agric.*, 509 F.3d 572 (D.C. Cir. 2007) ..............................27, 30

*N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472 (4th Cir. 2025) .....12

*N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393 (M.D.N.C. 2017) ...................44

*N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295 (4th Cir. 2020) .....21, 23

*NAACP v. Alabama*, 357 U.S. 449 (1958) ...............................................15

*NAACP v. City of Kyle*, 626 F.3d 233 (5th Cir. 2010) ...........................21

*Napco, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189 (M.D.N.C. 2021) ....38

*Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) .............44

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ...................................41

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...........................44

*Owens v. Stirling*, 438 S.C. 352, 882 S.E.2d 858 (2023) ........................24

*Oregon Advoc. Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ........................29, 30

*Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309 (S.D.N.Y. 2020) ......................21

*Planned Parenthood S. Atl. v. Wilson*, 26 F.4th 600 (4th Cir. 2022) .....................42

*Powell v. McCormack*, 395 U.S. 486 (1969) ...........................25

*Raines v. Byrd*, 521 U.S. 811 (1997) ...................................19

*Rts., Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ......................................................38

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
599 F.2d 707 (5th Cir. 1979) ................................................................15

*S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*,
713 F.3d 175 (4th Cir. 2013) ...........................................................17, 21

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,
789 F.3d 475 (4th Cir. 2015) .................................................................25

*SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370 (4th Cir. 2017)............26

*SCNAACP v. Alexander*, No. 3:21-cv-03302-MGL-TJH-RMG,
2023 WL118775 (D.S.C. Jan. 6, 2023) ............................................15, 32

*Sequan Smith v. SCDJJ*, No. 2022-CP-40-02142
(S.C. Ct. Comm. Pl. filed Apr. 25, 2022) ...............................................42

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ............................................43

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019)................................38

*Sigmon v. Stirling*, No. 3:21-cv-01651-RBH, 2021 WL 2402279
(D.S.C. June 11, 2021).........................................................................24

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...........................................11

*State v. Miller*, 441 S.C. 106, 110, 893 S.E.2d 306 (2023) ....................24

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
143 S. Ct. 2141 (2023).........................................................12, 19, 33, 26

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................. 2, 9, 12, 14, 15, 16, 17, 18, 21, 26, 31, 32

*Tenn. Prot. & Advoc., Inc. v. Bd. of Educ. of Putnam Cnty., Tenn.*,
24 F. Supp. 2d 808 (M.D. Tenn. 1998)...................................................18

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019)..................38

*Thomas v. Duvall*, No. 3:16-cv-00451, 2017 U.S. Dist. LEXIS 29689
(M.D. Pa. Mar. 1, 2017)........................................................................................39

*United States v. Springer*, 715 F.3d 535 (4th Cir. 2013) ....................................26, 34

*United Supreme Council v. United Supreme Council of the Ancient
Accepted Scot. Rite for the 33 Degree of Freemasonry*, 792 F. App'x 249
(4th Cir. 2019)...................................................................................................15, 31

*Uzzell v. Friday*, 592 F. Supp. 1502 (M.D.N.C. 1984)...........................................40

*Vaughan v. Recall Total Info. Mgmt.*, 217 F. App'x 211 (4th Cir. 2007) ..............38

*Voto Latino v. Hirsch*, 712 F. Supp. 3d 637 (M.D.N.C. 2024) ...............................44

*Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts
& Scis.*, 922 F.3d 568 (4th Cir. 2019)......................................................................32

*Warth v. Seldin*, 422 U. S. 490 (1975)...............................................................12, 42

*Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016)..................................42

*Wood v. Stirling*, 27 F.4th 269 (4th Cir. 2022) ......................................................24

## S<span style="font-variant:small-caps">TATUTES</span>

42 U.S.C. § 1983 ...........................................................................5, 39, 40, 41,43

42 U.S.C. § 1988...........................................................................................43, 45, 46

42 U.S.C. § 2000e-5..................................................................................................44

42 U.S.C. § 3613(c)(1)...............................................................................................44

42 U.S.C. § 3602(i) ...................................................................................................44

42 U.S.C. § 10804(c) ................................................................................................19

42 U.S.C. § 10807.................................................................................19

42 C.F.R. § 51.42(e)........................................................................9, 18, 27

## <u>RULES</u>

Fed. R. Civ. P. 8(a)..............................................................................16

Fed. R. Civ. P. 5.2................................................................................16

Fed. R. Civ. P. 12(b)(6)..........................................................................8

Fed. R. Evid. 201(b).............................................................................24

Fed. R. App. 28(b)(1)............................................................................3

On April 13, 2022, the South Carolina Department of Juvenile Justice (DJJ) settled with the Department of Justice (DOJ)—following a comprehensive investigation—to "remedy the alleged constitutional violations identified by" DOJ at a DJJ facility and to "ensure that the conditions . . . support the rights of the youth confined there, encourage rehabilitation, and improve the likelihood that youth will succeed upon release." ECF No. 1-7, at 2. Executive Director Hendrick has clarified the policies developed in the settlement will apply to all DJJ facilities. ECF No. 127-1, at 32.

Appellants, three advocacy groups, did not think the settlement agreement went far or fast enough. So they sued Appellees two weeks later, without naming a single juvenile, seeking six pages of mandatory injunctive relief that would infeasibly micromanage DJJ's operations. ECF No. 1. The original complaint, and later the amended complaint, pleads only conclusory allegations that DJJ committed constitutional and statutory deprivations impacting "South Carolina youth." JA69.

Federal courts cannot order systemic reform of state juvenile detention centers without assuring first that there has been a concrete and particularized deprivation of an identified individual's rights. Federal courts are not in the business of adjudicating advocacy groups' policy preferences better left to the legislative

process.    Article III confines federal courts to adjudicating actual cases and controversies ripe for judicial resolution.

Here, the district court correctly dismissed Appellants' amended complaint, holding squarely and soundly that they failed to state plausible organizational claims for relief and finding their associational claims moot.    To scuttle this problem, Appellants pluck sentences out of context from cases on standing, zone of interests, and federal statutory claims to cobble together an argument meant to convince the Court that the district court erred.    Though Appellants meet no test on its own terms. Nor do they establish the district court erred.

The elephant in the room is that Appellants failed to identify an individual juvenile detainee in their amended complaint.    *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977).    Applying controlling law to the allegations in the amended complaint, Appellants fail to plausibly allege organizational injury, and *Summers* forecloses an advocacy group's approach to Article III associational standing that lacks reference to a concrete and particularized deprivation of a federal right and resulting injury to an advocacy group's named member.    Where, as here, Appellants ask the Court to take over a State's juvenile justice facilities—with all the federalism, separation of powers, and comity concerns that kind of judicial oversight would entail—Appellants' approach falls short of accessing federal court for relief.

The Court can and should affirm the district court's dismissal of the amended complaint on mootness grounds and for failure to state plausible organizational claims for relief, and/or on the alternate sustaining grounds that Appellants lack standing to establish any organizational or associational claims.

## JURISDICTIONAL STATEMENT

Defendants-Appellees agree with and adopt Plaintiffs–Appellants' Jurisdictional Statement, *see* Fed. R. App. 28(b)(1), except to the extent it asserts the Court has appellate jurisdiction. As explained below, Appellants lack organizational and associational standing to assert the claims alleged in the amended complaint. *See John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628 (4th Cir. 2023) ("standing is jurisdictional").

## COUNTERSTATEMENT OF ISSUES

I.    Do Appellants—as advocacy groups—lack associational and organizational standing to bring claims based on alleged violations of unidentified juveniles' constitutional and statutory rights and purported harms that do not drain their resources due to an impact on their core business activities?

II.   Did the district court correctly dismiss Appellants' associational claims when the anonymous juveniles in the amended complaint on whom they purportedly relied to support standing and allege constitutional and statutory claims are no longer in DJJ custody?

III.    Did the district court properly find Appellants failed to state plausible Section 1983 claims under an organizational theory?

IV.    Did the district court rightly conclude Appellants failed to state plausible claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Individuals with Disabilities Education Act ("IDEA")?

COUNTERSTATEMENT OF THE CASE[1]

On April 26, 2022, Appellants filed this lawsuit against DJJ and Director Hendrick. ECF No. 1. DJJ moved to dismiss. Following a lengthy hearing, the magistrate judge issued her first report and recommendation (R&R) to dismiss the case for want of subject matter jurisdiction because Appellants lacked standing. JA6. The district court rejected the R&R and—analyzing only Justice 360—found Appellants had organizational standing, "at th[at] early stage," referring the matter back to the magistrate judge to address the remaining issues raised in DJJ's motion to dismiss. JA27.

The magistrate judge allowed the parties to file amended motions. ECF No. 73. The magistrate judge then issued a second R&R to grant DJJ's amended motion to dismiss, finding "[t]he Complaint fails to assert facts plausibly stating a claim

---

[1]Appellants spill pages of ink on the purported conditions at DJJ in their Statement of the Case. DJJ is cognizant of the motion-to-dismiss posture of the case in which the Court must accept the truth of those allegations. But DJJ has never filed an answer, and these allegations are not "undisputed." *Contra* Dkt. 15, at 13.

upon which relief can be granted under 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, and the IDEA." JA60. And she recommended dismissing via final order because Appellants never sought leave to amend. *Id.*

Appellants objected to the second R&R, and DJJ replied. ECF Nos. 104 & 109. The district court adopted the second R&R and dismissed Appellants' original complaint, finding it "includes only conclusory statements, which fail to state a claim as to harm for each cause of action." JA64–65. But it dismissed without prejudice, permitting Appellants to file an amended complaint. JA67–68. Appellants did so two weeks later. JA69.

The amended complaint mirrored the original, raising four Section 1983 claims alleging DJJ violated the Fourteenth Amendment rights of "South Carolina youth." JA133–137. The amended complaint then purported to state claims that DJJ violated the ADA, the Rehabilitation Act, and the IDEA, JA137–141. And Appellants asserted a six-page prayer for relief demanding "sweeping, systemic injunctive relief," JA58, within 30 days, JA141–147.

DJJ again moved to dismiss because the amended complaint still focused on "children" and "detained youth" in the abstract without naming any purported juvenile constituent and failed to state plausible claims for relief. JA149. After more briefing, JA149–230, the magistrate judge issued a third R&R, recommending the district court grant in part and deny in part DJJ's motion, JA232. The magistrate

judge concluded Appellants (1) failed to state plausible claims for relief under any theory of organizational standing and (2) did not state plausible associational statutory disability claims. JA257. The magistrate judge recommended denying the motion as to Disability Rights South Carolina's (DRSC) associational Section 1983 claims. Both parties filed partial objections and responses. JA259–360.

At Appellants' request, the district court held a telephone status conference on November 1, 2024, during which it inquired about the status of the "illustrative examples," Dkt. 15, at 19, of juveniles in the amended complaint. Because Appellants were unable to answer, the district court requested a status update on the juveniles and allowed the parties to file supplemental authorities, JA361. Ten days later, Appellants informed the district court that none of DRSC's juvenile constituents mentioned in the amended complaint as Children 5–13 were still in DJJ custody.[2] JA367. DJJ responded to the status report, arguing this new information underscored Appellants' standing problems and supported dismissal on mootness grounds. JA371.

The district court dismissed Appellants' amended complaint on December 18, 2024. JA375. Although the district court found DRSC had associational standing to bring claims on behalf of unnamed juveniles, JA394, it dismissed DRSC's claims

---

[2] Appellants "offered to supplement the factual record" only "in support of their Motion for Preliminary Injunction." JA369; *contra* Dkt. 15, at 30.

on mootness grounds because DRSC's purported constituents—Children 5–13—are no longer in DJJ custody, JA395–397. No exception to mootness applied. JA398–400.

As to Appellants' organizational claims, the district court found Justice 360—which has only two clients in one DJJ facility—had organizational standing, JA388–389, but dismissed all organizational claims under Rule 12(b)(6). JA400–403. On the Section 1983 claims, citing *Owens*, 561 F.2d 560, the district court found Appellants failed to allege "their *own* Fourteenth Amendment rights have been violated." JA402–403. Appellants failed to object to the magistrate judge's recommendation to dismiss their organizational statutory disability claims. JA400 n.15. So, finding no clear error, the district court adopted the magistrate judge's recommendation and analysis dismissing those claims. *Id.*

Appellants never moved to reconsider or asked the district court for an opportunity to brief mootness. Instead, they filed this appeal on January 8, 2025.

STANDARD OF REVIEW

"The issue of standing to sue is a legal question that [this Court] assess[es] de novo." *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011). And the Court reviews "'de novo the grant of a motion to dismiss for failure to state a claim,' applying the same standards as the district court." *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021) (quoting *Garnett v. Remedi Seniorcare of Va., LLC*, 892

F.3d 140, 142 (4th Cir. 2018)).  On a Rule 12(b)(6) motion, the Court must accept

Plaintiffs' factual allegations as true and draw all reasonable inferences in their

favor.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th

Cir. 2011).  But that "tenet . . . is inapplicable to legal conclusions."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  Further, the "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Facts

pled that are merely consistent with liability are not sufficient."  *A Soc'y Without a

Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

SUMMARY OF ARGUMENT

Whether for a want of subject matter jurisdiction based on standing and

mootness or for failure to state a claim, the Court should affirm the district court's

dismissal of Appellants' amended complaint via final order.

DRSC's assertion of associational standing fails for several reasons, including

that DRSC—as a protection and advocacy organization—lacks an "indicia of

membership," *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977),

required for an organization to assert claims on behalf of its members.  DRSC has

no members; it only has "constituents," who do not control DRSC's organization

and decisionmaking as *Hunt* requires.  Most importantly, DRSC has not shown its

constituents otherwise had standing to sue in their own right because it has not

named or pseudo-named any juvenile constituent in the amended complaint. It contends it does not have to, but the "requirement of *naming* the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity." *Summers*, 555 U.S. at 498 (emphasis added).

Even if DRSC's theory of associational standing could pass muster, the Court should affirm the district court's dismissal of DRSC's associational claims because none of its unnamed juvenile constituents used as "illustrative examples" in the amended complaint—Children 5–13—are still in DJJ custody. So "declaratory and injunctive relief relating to the [] conditions of confinement" is unavailable because the allegedly harmed juveniles "[a]re no longer subjected to the alleged treatment" because "they were released." *Owens*, 561 F.2d at 562. This case is thus moot, and no exceptions apply. Further, DRSC did not plausibly allege, nor can this Court assume, all its purported constituents are harmed at all five DJJ facilities, much less that DRSC has consent from any other juvenile's parents to sue on their behalf, *see* 42 C.F.R. § 51.42(e).

Appellants fare no better on organizational standing because they cannot show harms to two unnamed juveniles in DJJ custody "affected and interfered with [] core business activities," causing a "drain" on their resources. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *FDA v. All. for Hippocratic Med.*, 602 U.S.

367, 395 (2024).  Because Appellants allege only that DJJ violated Fourteenth Amendment rights of "South Carolina youth," not "how their own Fourteenth Amendment rights have been violated," JA402, their claims under Section 1983 fail too.

Even if viewed as a zone-of-interests question, Appellants' organizational Section 1983 claims fail because they were not deprived of constitutional rights *and* injured by such deprivation.  Nor are they the class of persons Section 1983 or the Fourteenth Amendment were intended to protect.  Appellants' citation to cases in contexts other than conditions-of-confinement are inapposite.  Especially when Appellants' harm (if any) is "purely derivative" of unnamed juveniles' alleged harm.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

Finally, Appellants' claims under the ADA, Rehabilitation Act, and IDEA are foreclosed—if not waived[3]—because the amended complaint provides no plausible connection between the harms *Appellants* purportedly suffered as organizations and the alleged statutory violations experienced by unidentified juveniles.

ARGUMENT

I.    *Appellants lack standing to bring constitutional or statutory disability claims based on alleged injuries of "South Carolina youth."*

---

[3] Appellants failed to object to the third R&R's dismissal of these claims and then to move the district court to reconsider its adoption of the third R&R.

Before considering the merits of Appellants' appeal, the Court must assure itself of jurisdiction. *See Moore v. Frazier*, 941 F.3d 717, 725 (4th Cir. 2019) ("Despite the district court's erroneous conclusion about its jurisdiction, under well-established precedent, [the Court] can affirm its decision to dismiss the complaint on any ground apparent on the record."). As "the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved," "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (cleaned up).

"Indeed, '[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (citation omitted). "The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). To show standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an

injury in its own right or . . . it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2157 (2023) ("*SFFA*") (quoting *Warth v. Seldin*, 422 U. S. 490, 511 (1975)). "When the plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . ordinarily 'substantially more difficult' to establish." *N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472, 489 (4th Cir. 2025) (quoting *Summers*, 555 U.S. at 493–94).

> A.    *DRSC lacks associational standing.*[4]

Appellants assert associational standing only as to DRSC's reference to unnamed juvenile constituents who used to be in DJJ custody. *See* JA390 n.11.

For associational standing, DRSC must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *SFFA*, 143 S. Ct. at 2157 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U. S. 333, 343 (1977)). A "plaintiff-organization[]" must "make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Summers*, 555 U.S. at 498 (emphasis added).

---

[4] The Supreme Court clarified "standing solely as the representative of its members" is "organizational" standing. *See SFFA*, 143 S. Ct. at 2157. Because the parties and the district court called it "associational standing" below, DJJ will do so here too.

### 1. DRSC lacks an "indicia of membership."

DRSC "fails to establish the first prong of th[e] inquiry," *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241, 244 (5th Cir. 1994) ("*ARC*"), because it has not offered evidence of an "indicia of membership," *Hunt*, 432 U.S. at 344. While this Court has not decided the issue, jurisdictions that have are split as to whether protection and advocacy groups may litigate on behalf of its constituents. "The Eighth and the Fifth Circuits hold that P&A systems do not have associational standing." *Disability Rts. Pa. v. Pa. Dep't of Human Servs.*, No. 1:19-CV-737, 2020 U.S. Dist. LEXIS 53415, at *18 (M.D. Pa. Mar. 27, 2020). For good reason: a P&A group "bears no relationship to traditional membership groups because most of its 'clients' . . . are unable to participate in and guide the organization's efforts." *ARC*, 19 F.3d at 44.

That is the case here. Unlike the active members guiding the decisionmaking of the association in *Hunt*, DRSC's "constituents" have no control over it. They do not "elect members," serve in DRSC roles, or "finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. DRSC thus "bears no relationship to traditional membership groups because most of its 'clients'—handicapped and disabled people—are unable to participate in and guide the organization's efforts." *ARC*, 19 F.3d at 44. For these reasons, the Fifth Circuit rejected a P&A system's assertion of associational standing

to pursue claims on behalf of clients.  *Id.*  So did the Eighth Circuit.  *See Mo. Prot. & Advocacy Servs. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007) (following the Fifth Circuit's approach, finding "the 'constituents' of [the advocacy group] have no such relationship to the organization").  This Court should do the same.

> 2.  Summers *prevents DRSC from litigating claims on behalf of unnamed juveniles.*

Even if DRSC could establish an "indicia of membership," that "does not relieve" DRSC "of its obligation to satisfy *Hunt*'s first prong by showing that one of its constituents otherwise had standing to sue." *Doe v. Stincer*, 175 F.3d 879, 886–87 (11th Cir. 1999).  To do so, Appellants must name a constituent and allege a ripe case or controversy as to that juvenile.

Over three years of litigation, and with leave to amend the complaint, DRSC has failed to name or pseudo-name any juvenile who could individually sue for the violations alleged in the amended complaint.  While DRSC claims it does not have to, binding Supreme Court precedent counsels otherwise.

In *Summers*, the Supreme Court found the "requirement of *naming* the affected members has never been dispensed with in light of statistical probabilities, but only where *all* the members of the organization are affected by the challenged activity."  555 U.S. at 498 (emphasis added); *see also Friends of Georges, Inc. v. Mulroy*, No. 2:23-cv-02163-TLP-tmp, 2023 WL 3790583, at *10 (W.D. Tenn. June 1, 2023) (rejecting invitation "to find associational standing from the fact that all its

members are harmed" under a tortured reading of *NAACP v. Alabama*, 357 U.S. 449

(1958), holding its "failure to identify a single injured member dooms its

associational standing claim"). Indeed, "an organization cannot base standing on

injury to its unnamed members or members of the public at large." *Coal. for

Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 13 (D.D.C. 2010).

Without knowing something so critical as the alleged constituent's identity,

there is no way for DJJ or the Court to determine whether the first prong of

associational standing—standing to sue in his or her own right—is met.[5] Referring

to a "constituent" as "Child 5" does not identify him as *Summers* requires.[6] *See

United Supreme Council v. United Supreme Council of the Ancient Accepted Scot.

Rite for the 33 Degree of Freemasonry*, 792 F. App'x 249, 257 n.3 (4th Cir. 2019)

("*USC*") ("To fulfill that requirement, a party must *specifically* 'identify members

---

[5] "Basic fairness dictates that those among the defendants' accusers who wish to
participate . . . as individual party plaintiffs must do so under their real names." *S.
Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713
(5th Cir. 1979).

[6] Respectfully, the district court erred in finding DRSC "identified" any juvenile
constituent in the amended complaint. For one, the court did not explain why it
found the cases DJJ cited that an individual must be named inapposite. JA394;
JA361. Nor did it grapple with the fact DJJ distinguished the cases Appellants cited
because they included named or pseudo named plaintiffs, or affidavits or
declarations from individuals to support standing. For another, the redistricting case
the district court cited on this had a named plaintiff. JA394; *SCNAACP v. Alexander*,
No. 3:21-cv-03302-MGL-TJH-RMG, 2023 WL118775 (D.S.C. Jan. 6, 2023).

who have suffered the requisite harm.'" (emphasis added) (quoting *Summers*, 555 U.S. at 499)); *see also* Fed. R. Civ. P. 8(a); *cf.* Fed. R. Civ. P. 5.2.

A "name," the Second Circuit recently confirmed, "is relevant to standing because it shows that identified members are genuinely ready and able to apply, and are not merely enabling the organization to lodge a hypothetical legal challenge. A member's name does not merely check a box; it is a demonstration of the sincerity of the member's interest" in the conduct. *Do No Harm v. Pfizer, Inc.*, 96 F.4th 106, 116 (2d Cir. 2024).[7] None of this "precludes an organization from seeking to protect its members' identities either from the public or the opposing party—pursuant to existing legal procedures and standards." *Id.* at 117–18.

Of course, DJJ recognizes minors require protection, but the settled practice is to "use the initials of the minor child to protect [his or] her privacy." *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 164 n.1 (4th Cir. 2004). Still, the Supreme Court in *Summers* must have "meant what it said." *Do No Harm*, 96 F.4th at 116. And the cases Appellants have cited throughout this case as purportedly supporting their novel theory of standing only underscore the impropriety of DRSC suing this way.

---

[7] Although this Court has not yet considered the meaning of *Summers* in this context, it recently found in a different context—relying on case law citing *Summers*—that "Plaintiffs must 'name' or otherwise identify every entity whose claims they assert, and they lack standing to bring claims on behalf of unnamed entities." *MSP Recovery Claims, Series Ltd. Liab. Co. v. Lundbeck Ltd. Liab. Co.*, 130 F.4th 91 (4th Cir. 2025) (internal quotation marks omitted) (quoting *MSP Recovery Claims, Series LLC v. Pfizer, Inc.*, 728 F. Supp. 3d 89, 100 (D.D.C. 2024)).

Since disclosing to the district court that *none* of those constituents are still in DJJ custody, JA367, moreover, DRSC takes an already tenuous approach to *Summers* even further. DRSC asks to proceed without naming *any* individual constituent that has been harmed and remains in DDJ custody because "many DRSC constituents remain in DJJ custody" and "harms to DRSC members therefore will persist." Dkt. 15, at 39; *but see S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (dismissing complaint because homeowners' association "failed to identify a single *specific member* injured by the" activity and finding *Summers* doomed its associational standing because "without specific mention of any individual member's injury—[it] surely 'stops short of the line between possibility and plausibility'" (quoting *Iqbal*, 556 U.S. at 678))[8]; *see also Stincer*, 175 F.3d at 886.

The Court's jurisprudence insisting a plaintiff present a ripe, concrete case or controversy is for good reason. DRSC cannot plausibly allege, or demand the Court presume, *all* its purported constituents are constitutionally injured by, for instance, the conditions at every DJJ facility or the use of isolation. That is both speculative and conclusory. *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d

---

[8] In distinguishing the case later, this Court explained its ruling in *S. Walk*, stating "we found associational standing lacking at the motion to dismiss stage because the complaint did not allege any such individual injuries, much less include affidavits to that effect." *Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013). So too here.

175, 180 (4th Cir. 2000) (court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); *see also Tenn. Prot. & Advoc., Inc. v. Bd. of Educ. of Putnam Cnty., Tenn.*, 24 F. Supp. 2d 808, 816 (M.D. Tenn. 1998) (dismissing advocacy group's complaint for lack of associational standing when it was "not filing on behalf of specific, named, injured individuals . . . [and] merely allege[d] that the defendant's conduct discriminates against all the disabled children in the . . . school system").

DRSC cannot "take formal action on behalf of individuals with legal guardians or conservators, or initiate a formal attorney/client or advocate/client relationship without appropriate consent" either.   42 C.F.R. § 51.42(e).   DRSC claimed it received permission to "take formal action" for Child 5–13 but stopped short of saying it had permission to file suit on their behalf.[9]   *See* JA129.   In any event, no such consent exists for all its purported constituents.   Thus, DRSC's all-have-been-harmed approach runs afoul of this requirement too.

Mere allegations "that some (unidentified) members . . . will suffer (unidentified) concrete harm as a result" of DJJ's actions is a "novel approach to the law of organizational standing" that "would make a mockery of our prior cases." *Summers*, 555 U.S. at 498.   DRSC is federally funded, to be sure, but "Congress

---

[9] Perhaps the lack of permission is why Appellants won't name or pseudo-name any juvenile.

cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). And "Congress has not abrogated prudential standing requirements by expressly authorizing this type of global challenge to state programs absent the participation of individuals seeking redress of specific injuries." *Carnahan*, 499 F.3d at 810 n.7 (citing 42 U.S.C. §§ 10804(c) & 10807).

### 3. *Appellants' claims and relief require individual participation.*

DRSC likewise cannot establish the third prong of associational standing— that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *SFFA*, 143 S. Ct. at 2157. "[T]o state a civil rights claim upon which relief can be granted under [Section] 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States." *Owens*, 561 F.2d at 562– 63. And "declaratory and injunctive relief relating to the [] conditions of confinement" is unavailable if the purported juvenile constituents "[a]re no longer subjected to the alleged treatment" because "they were released." *Id.* at 562.

Appellants' conditions-of-confinement case, based on constitutional and statutory rights of juveniles, requires individual participation by those allegedly harmed juveniles. At a minimum, the Court must be able to (1) satisfy itself of subject-matter jurisdiction by ensuring the alleged juveniles have standing to pursue

non-moot claims; and (2) determine whether the alleged juvenile exhausted remedies, as required, under the Prison Litigation Reform Act.

Indeed, one can surmise that Appellants lacked the ability to name any juvenile in DJJ custody who had exhausted remedies under the PLRA and could pursue a class action justifying the expansive, systemic relief sought in this case. Else, Appellants would have done so. Further, conditions of confinement cases are inherently personal. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("If . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care . . . simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons."). Proof is in the pudding: the mootness situation in which we now find ourselves, *see infra* Section II, only proves why individual participation is both necessary and required.

\*     \*     \*

In sum, DRSC cannot sue on the backs of unnamed "constituents" without saying who they might be, how they were allegedly harmed, or how "systemic relief" at all five DJJ facilities would redress their alleged individual problem. To proceed with an associational claim, DRSC must name at least one juvenile constituent in DJJ custody who has suffered some constitutional harm or statutory violation. *See*

*Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 320 (S.D.N.Y. 2020) ("Unless 'all the members of an organization are affected by the challenged activity,' Plaintiff must name at least one of its 'affected members' to establish associational standing at the pleading stage." (quoting *Summers*, 555 U.S. at 498–99)). Despite being given the opportunity, DRSC did not. The Court should therefore affirm dismissal of Appellants' amended complaint on this alternative ground.

>    B.    *Appellants also lack organizational standing.*

For organizational standing, "a court conducts the same inquiry as in the case of an individual." *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991). It evaluates whether the organization meets the three elements of injury in fact, causation, and redressability. *S. Walk*, 713 F.3d at 182.

Courts have said "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct." *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). But not just any diversion will suffice. The complained of action must "perceptibly impair" an organization's ability to carry out its mission *and* "consequent[ly] drain . . . the organization's resources." *Havens*, 455 U.S. at 379. This "standard is not met simply because an organization makes a 'unilateral and uncompelled' choice to shift its resources away from its primary objective to address a government action." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (citation omitted).

Rather, as the Supreme Court recently clarified, an organization must show a defendant's "actions directly affected and interfered with [] core business activities." *Hippocratic Med.*, 602 U.S. at 395. Importantly, the Court explained, "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396 (rejecting that *Havens* found an organization has standing when it "diverts its resources in response to a defendant's actions," stating "*Havens* does not support such an expansive theory of standing").

Justice 360 says it is harmed in two ways. First, it alleges conditions at DJJ "directly harm Justice 360 by diverting its resources (here, staff time) and frustrating its mission to provide direct representation to children." JA119. And allegedly, "[a]s a result, the organization cannot represent as many children." *Id.* Second, it alleges DJJ "cause[s] Justice 360 to divert some of its time and attention away from education about the direct representation of juveniles and into trainings designed to improve conditions-related advocacy," JA123, even though "providing trainings and support to other attorneys and practitioners is part of how Justice 360 fulfills its mission," JA124.

The Court cannot derive any reasonable inference from these allegations that DJJ has directly affected and interfered with Justice 360's core business activities so much as to cause a "drain" on its resources. *Cf. E. Shore Markets*, 213 F.3d at 180.

Taking the latter allegation first, Justice 360 admits it held one virtual training "session" in 2021 and drafted model family court pleadings to avoid placement in DJJ facilities. JA124. Yet diverting "some of its time and attention" to matters "not historically involved" with its mission does not satisfy the *Havens* standard. *Cf. Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) ("To determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation . . . suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'" (alteration in original) (citation omitted)); *N.C. State Conf. of the NAACP*, 981 F.3d at 301. The allegations do not establish DJJ's "actions directly affect[ed] and interfer[ed] with [Justice 360's] core business activities," much less in a way that caused a significant drain on its resources. *Hippocratic Med.*, 602 U.S. at 395.

Similarly, Justice 360's bald claim that it cannot take on more clients because of DJJ is unavailing. Accepting the facts alleged in the amended complaint as true, one Justice 360 attorney currently represents two clients—Children 1 and 4—at one DJJ facility. JA367; JA119; JA122. The attorney meets with each juvenile "twice per month, for between 30 minutes and 3 hours." JA120. In other words, at most, the Justice 360 attorney meets with two juvenile clients for less than two days a month. That Justice 360 cannot take on other juvenile cases because one attorney

must devote 1–2 days a month to existing clients is either a marker of time management issues or an indication that representing juveniles in DJJ custody is not in fact a priority or part of its core services. It certainly has ample time to devote to other types of complex cases.[10]

Based on these allegations, Justice 360 has failed to allege DJJ's activities have affected and interfered with its core mission, causing a "drain" on its resources. *See Havens*, 455 U.S. at 379; *see also ARC*, 19 F.3d at 244 ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization. . . . If this were not so, then, for example, indigent defender organizations . . . or any other self-styled advocacy group could assert standing to sue whenever it believed the rights of its targeted beneficiaries had been violated.").

As for DRSC, the amended complaint contains no allegations that its core mission has been significantly or perceptively impaired, causing a drain on resources either. *Havens*, 455 U.S. at 379. Nor could it: DRSC "conducts routine monitoring

---

[10] Since commencing this action, Justice 360 has been very active in death penalty matters and frequently associates outside counsel to assist. *E.g.*, *Justice 360 v. Stirling*, 42 F.4th 450 (4th Cir. 2022); *Bowman v. Stirling*, 45 F.4th 740 (4th Cir. 2022); *Wood v. Stirling*, 27 F.4th 269 (4th Cir. 2022); *Bryant v. Stephan*, 17 F.4th 513 (4th Cir. 2021) (en banc); *Sigmon v. Stirling*, No. 3:21-cv-01651-RBH, 2021 WL 2402279, at *1 (D.S.C. June 11, 2021); *Owens v. Stirling*, 438 S.C. 352, 882 S.E.2d 858 (2023); *Moore v. Stirling*, 436 S.C. 207, 871 S.E.2d 423 (2022); *State v. Miller*, 441 S.C. 106, 110, 893 S.E.2d 306, 308 (2023) (filing amicus brief); *Jones v. State*, 440 S.C. 14, 18, 889 S.E.2d 590, 593 (2023) (same); Fed. R. Evid. 201(b).

visits at all 5 of DJJ's secure facilities." JA130. DRSC admits its mission is to "ensure that the rights of individuals with mental illness are protected." JA125. Still, DRSC alleges DJJ somehow "frustrate[s] DRSC's mission and purpose [by] forc[ing] it to divert resources away from being able to advocate on behalf of children with disabilities" and "protect its constituents." JA125–126. DRSC has "no legally-protected interest in not expending their resources on behalf of individuals for whom they are advocates." *ARC*, 19 F.3d at 244.

For these reasons, Appellants lack organizational standing.[11] The Court should affirm the district court on standing grounds in lieu of, or in addition to, affirming the dismissal of Appellants' amended complaint for the reasons the district court set forth and fully discussed below.

II.    *The district court correctly found DRSC's associational claims moot.*

"When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Mootness also arises when "there is no effective relief available in

---

[11] Understandably, Appellants have since abandoned their assertion that sending a single letter to DOJ gave SCNAACP organizational standing.

federal court." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 389 (4th Cir. 2017) (citation omitted)). And "[t]he justifications for [the mootness] doctrine are particularly apparent" when plaintiffs ask the Court "to resolve a difficult question of law in a rapidly evolving context." *Id.*

Here, after DRSC notified the district court that none of its purported constituents remain in DJJ custody, *see* JA367, it found the associational claims moot.[12] With none of DRSC's constituents "still in a position to have their injuries redressed by the relief sought in this case," the district court found "there is no longer a live controversy and [DRSC] thus has no one to represent." JA397. And "the possibility that some of [DRSC's] unidentified juveniles may be similarly harmed is insufficient to support a live claim, as establishment of a controversy depends upon specific allegations of identified members." *Id.*

The district court got it right. A case is moot and "declaratory and injunctive relief relating to the [] conditions of confinement" is unavailable if the allegedly harmed juveniles "[a]re no longer subjected to the alleged treatment" because "they

---

[12] The district court's statement (and Appellants' insistence) that DJJ never raised mootness is inaccurate. DJJ raised *Owens* early and often, *see* JA372, for this reason: litigating in anonymity contrary to *Summers* is dubious because juveniles come and go. Given the transient nature of juvenile detention, *Owens*' holding magnifies Defendants' argument that the "relief requested requires participation of individual members," *SFFA*, 600 U.S. at 199 (quoting *Hunt*, 432 U.S. at 343), to challenge their conditions of confinement. In any event, "[m]ootness is a jurisdictional question and thus may be raised *sua sponte* by a federal court at any stage of proceedings." *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013).

were released." *Owens*, 561 F.2d at 562. Contrary to Appellants' sweeping statements, moreover, DJJ *does* dispute that "DRSC (now and always) represents dozens of constituents in Defendants' custody" and "that those [purported] child-constituents are presently and continuously suffering." Dkt. 15, at 37. Child 5–13 purportedly "identified" in the amended complaint are no longer in DJJ custody. And DRSC has not alleged it has consent from any other purported constituent's parent or guardian to "represent" them in this litigation.[13] *See* 42 C.F.R. § 51.42(e).

Nor did DRSC "plausibly allege[] that it has [remaining] members in Defendants' custody who are harmed." Dkt. 15, at 39. The amended complaint simply states "every child constituent at DJJ" is harmed at all five DJJ facilities. JA130–132. These allegations are conclusory and speculative. *See E. Shore Markets*, 213 F.3d at 180 (courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); *see also Munsell v. Dep't of Agric.*, 509 F.3d 572, 583 (D.C. Cir. 2007) ("A matter is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"). DRSC has not plausibly alleged, nor can it demand the Court to presume, *all* its purported constituents are constitutionally injured by, for instance, the conditions at every DJJ facility or the

---

[13] Nor would that be a reasonable inference given that, in prior rounds of injunction briefing, Appellants relied on purloined injuries of juveniles represented by other counsel who had sued DJJ in state court. *See* ECF Nos. 82-1 & 88, at 9.

use of isolation. *E.g.*, *Lewis*, 518 U.S. at 350. Especially when it has not identified any remaining constituents and, tellingly, failed to bring a class action.

As this Court put it:

> Mootness questions often arise in cases involving inmate challenges to prison policies or conditions, and courts, including our own, have held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief.

*Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007). Appellants ignore *Incumaa* and other precedent from this Court on mootness.

In *Owens*, for example, nine inmates sued the county jail under Section 1983 for five conditions of confinement. 561 F.2d at 561. The district court dismissed the suit for failure to allege "they, themselves, suffered from any of the five conditions of confinement," and during the pendency of the appeal, all nine inmates were released. *Id.* at 561–62. This Court found the inmates' request for injunctive and declaratory relief moot because "all the inmates who sought declaratory and injunctive relief relating to the five conditions of confinement complained of were no longer subjected to the alleged treatment once they were released" and because "[t]he suit below was not filed, nor was it ever certified, as a class action." *Id.*

Instead of these authorities, Appellants focus on a case from the Ninth Circuit that is *not* a conditions of confinement case and was decided on a very different

record than the one here. *See Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003). In *Mink*, the named plaintiff (also an OAC constituent), requested OAC sue on his behalf for declaratory and injunctive relief because the state hospital had not admitted him fast enough for evaluation, leaving him in a county jail too long. *Id.* at 1105. Once filed, the case proceeded quickly to an injunction hearing and a bench trial in three weeks. *Id.* at 1107. At the injunction hearing, evidence showed the named plaintiff and six others awaited admission to the state hospital at the inception of the lawsuit (and thus had standing), but by the time of trial, they had been admitted. *Id.* at 1116. The State argued the named plaintiff's and, by extension, OAC's associational claims were moot. *Id.*

The Ninth Circuit determined the trial record showed "detention of incapacitated criminal defendants for weeks or months in Oregon county jails is an ongoing, pervasive and systemic problem" and that, although the original seven inmates had been transported to the state hospital, there was "a list of 11 [other criminal] defendants awaiting transport." *Id.* at 1117. The Court emphasized the length of detention in county jail before admission to the hospital was "short enough that any individual detainee's claim would probably become moot before trial" and "[i]n addition, the constant existence of OAC constituents suffering the deprivation is certain." *Id.* at 1117–18.

The same cannot be said here. There is no named plaintiff, and the amended complaint contains only speculative and conclusory allegations that "every" DRSC juvenile constituent suffers constitutional and statutory violations. Importantly, the time in DJJ custody is not always too short for juveniles to adjudicate claims— Childrens 1 and 4 are still in DJJ custody and juveniles sue DJJ in state court often. *See infra* note 20. Further, the state hospital in *Mink* took "the categorical legal position that it [wa]s not responsible for ensuring the timely admission of incapacitated criminal defendants" and admittedly had a policy to turn away mentally incapacitated defendants for which it did not have a bed. 322 F.3d at 1118.

Moreover, unlike in *Mink*, the third prong of associational standing here centers on a constitutional problem, not a prudential one. Under *Owens* and *Incumaa*, detainees cannot seek prospective injunctive and declaratory relief once they are no longer detained because their claims are moot. The Ninth Circuit did not discuss any similar binding precedent. And mootness is constitutional. Thus, in addition to being unpersuasive, the Ninth Circuit's analysis is both distinguishable and nonbinding.

To that end, the district court's reliance on *Munsell* and *Milwaukee Police Association v. Board of Fire & Police Commissioners of Milwaukee*, 708 F.3d 921 (7th Cir. 2013), is proper, and Appellants criticism of these cases is without merit. The associations' claims in those cases "rested on the injury to a single, mooted-out

individual." Dkt. 15, at 42. So too here. Appellants have consistently stated DRSC's associational claims are based on "nine children incarcerated at DJJ." *E.g.*, JA244–245, JA284, JA287, JA302, JA343, JA350, JA352. Only now, after being forced to reveal those juveniles no longer reside at DJJ, do they change their tune. Appellants argue they do not need to "specifically" identify a juvenile or even provide "illustrative details." Dkt. 15, at 43; *but see USC*, 792 F. App'x at 257 n.3. That statement is puzzling given DRSC has touted for the last year and a half that it "specifically identified" the nine unknown juveniles referenced in the amended complaint to establish its associational claims, *see* JA182, JA184, JA191, JA303, JA350. The district court appropriately recognized this bait and switch.

As the district court properly found, "[t]he possibility that some of [DRSC's] unidentified juveniles may be similarly harmed is insufficient to support a live claim, as establishment of a controversy depends upon specific allegations of identified members." JA397 (citing *Summers*, 555 U.S. at 497–98). Appellants' challenges to that ruling lack merit. *Cf. Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 606 (4th Cir. 2012) ("Because Tillett is a member of the Foundation and the Foundation has relied exclusively on her alleged injury to support its standing, its claim to standing rises or falls with Tillett. Thus, because Tillett lacks standing, so too does the Foundation.").

Besides citing *Mink* and criticizing the district court's case law analysis, DRSC is left with contorting context-specific rulings from voting cases. Voting cases are inherently different, though, because one can assume—based on a statistical probability—at least one voter who is a member of the association vying for associational standing is affected by a voting law of general applicability. *See Summers*, 555 U.S. at 498. The Court cannot make such assumptions in this context.

And the only case Appellants cite in an arguably similar context had a named plaintiff and was brought as a putative class action. *See Dunn v. Dunn*, 219 F. Supp. 3d 1163 (M.D. Ala. 2016). Almost every case Appellants have cited in this litigation was brought by a named or pseudo-named plaintiff, as a class action, or on behalf of a named individual. *E.g.*, JA221–222, JA224, & JA325–326. Even the redistricting case Appellants cite had a named plaintiff. *Alexander*, No. 3:21-cv-03302-MGL-TJH-RMG, 2023 WL118775. These cases underscore the novelty and impropriety of DRSC's associational claims.

Finally, the Court should consider whether Appellants have waived the appeal of the district court's decision on mootness. After the district court issued its decision, Appellants did not move to reconsider or ask for further briefing. *See Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568, 578 (4th Cir. 2019) (stating "to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before

the district court"). After all, Appellants admit they knew where the district court was heading when it asked about the status of the juveniles. *See* Dkt. 15, at 30 ("[f]earing that the court might consider an issue not briefed by either party").

Because the former juvenile detainees cannot bring claims "in their own right," *SFFA*, 600 U.S. at 199, DRSC cannot do so on their behalf. The Court should therefore affirm dismissal of DRSC's associational claims on mootness grounds.

A. *The district court correctly found no exceptions to mootness apply.*

"In the absence of a class action, jurisdiction on the basis that a dispute is 'capable of repetition, yet evading review' *is limited to the 'exceptional situation*,' in which '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (cleaned up) (emphasis added). Neither element is met here.

"[C]onsidering the applicability of this exception," the district court noted "again that it is the live controversy between the identified members of the organization and the defendant that is the basis for an organization's associational standing—the organization's role is only as a representative of the members who themselves have standing." JA398.

While Appellants are correct that juvenile detention is transient, they are incorrect that it is "impossible to 'fully litigate'" juvenile's claims "before they

expire." Dkt. 15, at 46. For one, according to Appellants, Children 1 and 4—Justice 360's clients—are still in DJJ custody and have been since Appellants filed the amended complaint on September 28, 2023. JA367, JA119, JA122. For another, juvenile detainees frequently file individual state-court lawsuits against DJJ. *See infra* note 20.

To attack the district court's sound decision rejecting the narrow exceptions to mootness, Appellants lean on a host of inapposite cases. In *Gerstein v. Pugh*, the Supreme Court found the case fell within the "narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." 420 U.S. 103, 110 n.11, (1975). That was because "the constant existence of a *class* of persons suffering the deprivation is certain." *Id.* (emphasis added). Appellants chose not to include a named plaintiff or pursue this case as a class action. And in *Springer*, considering whether the government's attempt to civilly commit a specific *individual* (not a claim based on associational standing for the systemic relief requested here) had been mooted, the Court stated, "a change in *an individual's confinement status* does not moot *the individual's challenge* to his prior civil commitment under state and federal statutes." 715 F.3d at 541 (emphasis added).

The district court correctly found DRSC's moot associational claims do not satisfy the first prong of the "capable of repetition, yet evading review" exception.

Appellants likewise fail on the second prong of this exception. "[M]ootness jurisprudence in this context" cannot be based "on the likelihood that an inmate will fail to follow prison rules. Such 'conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power' to hear cases for which there is *in fact* a *reasonable* expectation of repetition." *Incumaa*, 507 F.3d at 289 (quoting *Abdul-Akbar v. Watson*, 4 F.3d 195, 207 (3d Cir. 1993)). Rather, "[t]here must be a 'demonstrated probability' that the challenged action will recur again, *and to the same complainant*." *Incumaa*, 507 F.3d at 289 (emphasis added) (quoting *Murphy v. Hunt*, 455 U.S. 478, 483 (1982) (per curiam)).

Recognizing this requirement, the district court found "there is no basis for a reasonable expectation that any of the identified juveniles will return to DJJ and thus be subject to the complained-of actions again." JA399. Appellants try to escape this sound ruling, arguing they met this requirement because DRSC has alleged "it will suffer the same harms, through its members." Dkt. 15, at 47. But Appellants conflate their organizational and associational claims. And voting cases are different.[14] Especially when organizations proceed by association of their members and have an *individually named plaintiff. Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021). Similarly inapposite are the other out-of-

---

[14] Even so, the voting case Appellants cite found the mootness exception inapplicable.

circuit cases that do not say what Appellants claim and include a *named individual plaintiff. See* Dkt. 15, at 48–49. The district court correctly found DRSC's associational claims based on nine juvenile constituents' purported injuries moot.

Last, the Court should disregard Appellants' argument that the "relation back" exception supports their position, Dkt. 15, at 49–50, because that exception applies *only* in class actions. Again, this is not a class action.[15] And class actions and associational claims have important differences with legal consequences. *See Hippocratic Med.*, 602 U.S. at 402–03.

For all these reasons, as well as those the district court discussed, Appellants' associational claims are moot.

III. *The district court correctly found Appellants failed to state plausible Section 1983 claims based on organizational standing because they failed to allege how their own Fourteenth Amendment rights had been violated.*

At the outset, the district court's ruling on Appellants' organizational Section 1983 claims under Rule 12(b)(6) was not tethered to their lack of prudential standing. Rather, citing *Owens*, the district court found Appellants failed to state plausible organizational claims under Section 1983 because they did not allege "how their

---

[15] During a hearing on DJJ's motion to dismiss the original complaint, the magistrate judge pointedly asked Appellants' then-counsel: "aren't you using associational standing on that theory to kind of circumvent the Rule 23 requirements for a class action by not having to identify a particular person who has, you know, sustained the harm and that's redressable and traceable?" ECF No. 46, at 24:6–10. Appellant's counsel responded that they did not bring this as a class action because they did not have to. *See id.* at 24:11–18

own Fourteenth Amendment rights have been violated." JA402 (citing *Owens*, 561 F.2d at 562–63). In fact, the district court specifically said "it need not analyze Plaintiff's additional zone of interests[/prudential standing] argument." JA403 n.17.

And this ruling was correct. Appellants simply ignore precedent directly on point that forecloses their claims. *See Owens*, 561 F.2d at 562–63; *Howerton v. Fletcher*, 213 F.3d 171, 173 (4th Cir. 2000) ("A section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." (citation omitted)). Because Appellants "have failed to allege how their *own* Fourteenth Amendment rights have been violated," JA402, the Court should affirm the dismissal of Appellants' organizational claims under Section 1983.

A. Even so, Appellants lack statutory standing under Section 1983 to bring organizational claims for alleged injuries to South Carolina youth.

"Federal courts' standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Doe v. Porter-Gaud Sch.*, No. 2:22-cv-02093-DCN, 2023 WL 122028, at *3 (D.S.C. Jan. 6, 2023) (internal citations omitted). "Prudential standing encompasses several judicially-created limits on federal jurisdiction, 'such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within

the zone of interests protected by the law invoked.'" *CGM, LLC v. Bellsouth Telecomms., Inc.*, 664 F.3d 46, 54 (4th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Supreme Court has clarified that, even though it was "under the 'prudential' rubric in the past," the proper nomenclature for this analysis is "zone of interests." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–27 (2014). "Whether a plaintiff comes within 'the zone of interests' is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127.

To begin, the question is whether Appellants fall within the zone of interests protected by Section 1983, the "legislatively conferred cause of action,"[16] *Lexmark*, 572 U.S. at 127, not the Fourteenth Amendment. *See Rts., Inc. v. Vance*, 802 F.3d 377, 388 n.9 (2d Cir. 2015) (framing zone of interests analysis "in the context of

---

[16] Appellants urge the Court to find the zone-of-interests test does not apply at all. But they never argued this below. *Vaughan v. Recall Total Info. Mgmt.*, 217 F. App'x 211, 222 (4th Cir. 2007) (noting this Court has "often held that an issue raised for the first time on appeal ordinarily will not be considered"). In any event, the cases they cite are inapplicable. None involve or discuss the test's applicability to a Section 1983 claim, which is *undoubtedly* a "legislatively conferred cause of action." *See Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019); *Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318 (1977); *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 21 (D.D.C. 2020); *Napco, Inc. v. Landmark Tech. A, LLC*, 555 F. Supp. 3d 189 (M.D.N.C. 2021). And the discussion relating to the test in *Sierra Club v. Trump* was dicta. 929 F.3d 670, 680 (9th Cir. 2019).

organizational claims under § 1983 more as a statutory than as a constitutional question"); *Calvin v. Conlisk*, 534 F.2d 1251, 1253 (7th Cir. 1976) (finding organizations' claim "that they will incur expenses" "not within the zone of interests protected by the Fourteenth Amendment or 42 U.S.C. § 1983"); *Thomas v. Duvall*, No. 3:16-cv-00451, 2017 U.S. Dist. LEXIS 29689, at *20 (M.D. Pa. Mar. 1, 2017) (finding plaintiff "lacks first-party standing to sue under § 1983 on behalf of I.W" as zone of interests test "generally prohibits raising another person's legal rights" and "encompasses constitutional civil rights claims"); *Heffernan v. City of Paterson*, 578 U.S. 266, 279 (2016) (Thomas, J., dissenting) ("Section 1983 provides a remedy only if the City has violated [the plaintiff's] constitutional rights, not if it has merely caused him harm. . . . [The plaintiff's] injury must result from activities within the zone of interests that § 1983 protects." (citing *Lexmark*, 572 U.S. at 130 n.5))).

Even if the Court looks at the Fourteenth Amendment, Appellants fare no better, regardless of whether "the zone of interests protected by [Section 1983] is coextensive with the zone of interests protected by the Constitutional right allegedly violated." Dkt. 15, at 53 (quoting *Jackson v. Sargent*, 394 F. Supp. 162, 168 (D. Mass. 1975)).[17] The Fourteenth Amendment is limited to deprivations of "life" or

---

[17] *Jackson*'s zone-of-interests analysis has no bearing here because that court considered whether a class of *individual persons* fell within the zone of interests of Section 1983, not whether an organization did. 394 F. Supp. at 168.

"liberty," in which Appellants, as organizations, have no protected interests here. *Cf. Uzzell v. Friday*, 592 F. Supp. 1502, 1515 (M.D.N.C. 1984) (finding claims within zone of interests because plaintiffs were "asserting their own rights, not those of others").

Appellants do not allege a violation of *their* constitutional rights because they do not have any at issue. They do not reside at DJJ, so DJJ could not have "deprived" them "of life, liberty, or property, without due process of law," U.S. CONST. amend. XIV, § 1. *See Alexander S. ex rel. Bowers v. Boyd*, 876 F. Supp. 773, 795 (D.S.C. 1995) (discussing rights the Fourteenth Amendment "guarantees *to juveniles who are incarcerated*" (emphasis added) (citation omitted)).

Because Appellants are not in the class of persons the Fourteenth Amendment was intended to protect here, they fall outside the zone of interests.[18]

> 1.  *Appellants' arguments contradict the plain language of Section 1983, policy, and precedent.*

Section 1983, the relevant statute, provides:

> Every person who, under color of [state law,] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to *the party injured* in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[18] The Court should reject Justice 360's belated attempt to reframe its Fourteenth Amendment argument as pertaining to juveniles' right to representation when that was not pled in the amended complaint. *See Martin*, 858 F.3d at 245.

42 U.S.C. § 1983 (emphasis added). Under "the language of § 1983," "[t]he appropriate plaintiff is obvious." *Andrews v. Neer*, 253 F.3d 1052, 1056 (8th Cir. 2001). Only "*the* party injured," *id.*, may bring an action, not *a* party injured. *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context." (cleaned up)); *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 587 U.S. 262, 272 (2019) ("use of the definite article indicates that there is generally only one person covered" (cleaned up)).

Appellants do not allege or possess constitutional rights to vindicate, and they are not "*the* party injured" by DJJ's alleged conduct. If the district court "adopted without discussion" "the textual analysis of Section 1983 (announced in the 2nd R&R, [and] incorporated by the 3rd R&R)," Dkt. 15, at 56, it did so correctly because "the person deprived and the party injured must be the same," JA50. That makes sense: "to state a civil rights claim upon which relief can be granted under [Section] 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States." *Owens*, 561 F.2d at 562–63; *see also Howerton*, 213 F.3d at 173.

To the extent any colorable claim existed, it would belong only to an "injured" juvenile detainee. 42 U.S.C. § 1983; *see also* JA51. Appellants, however, were not deprived of constitutional rights *and* injured by such deprivation. Consequently,

their claims fall outside the zone of interests protected by Section 1983. *See* JA51 (finding Appellants are "simply not the persons subject to the constitutional deprivation of which they complain" and they "lie outside the zone of interests protected by § 1983, which provides a remedy only for *federally protected* rights").

Appellants continue to cite overruled abortion cases out of context, *see Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275 (2022),[19] ignoring that they long ago abandoned third-party standing, ECF No. 15, at 15–16.[20] They also

---

[19] Several Justices had bemoaned the Supreme Court's creation of special standing rules for abortion cases. *Compare Warth*, 422 U.S. at 499, *and Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15, 17–18 (2004), *with June Med. Servs., LLC v. Russo*, 140 S. Ct. 2103, 2167–68 (2020) (Alito, J., dissenting), *id.* at 2173–74 (Gorsuch, J., dissenting) (collecting cases), *and Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 632, n.1 (2016) (Thomas, J., dissenting). In returning abortion to the States, the Court said, "*Roe* and *Casey* have led to the distortion of many important but unrelated legal doctrines, and that effect provides further support for overruling those decisions." *Dobbs*, 142 S. Ct. at 2275. One "distortion" was that "abortion cases" "ignored the Court's third-party standing doctrine." *Id.* After *Dobbs*, the convoluted third-party standing created in the unique context of abortion is no longer in play. At any rate, it never applied here. *See infra* note 20.

[20] To be sure, the only reason this Court gave for rejecting the State's argument in that case was that Planned Parenthood brought the case under third-party standing. *See Planned Parenthood S. Atl. v. Wilson*, 26 F.4th 600, 608 n.* (4th Cir. 2022) (subsequent history omitted). In any event, Appellants lack third-party standing to because they cannot and do not argue juvenile detainees' ability to protect their own interests is hindered. Plenty of juveniles have filed individual state-court lawsuits. *E.g.*, *Andre Long v. SCDJJ*, No. 2022-CP-40- 02216 (S.C. Ct. Comm. Pl. filed Apr. 28, 2022); *Sequan Smith v. SCDJJ*, No. 2022-CP-40-02142 (S.C. Ct. Comm. Pl. filed Apr. 25, 2022); *Jonathan Paz v. SCDJJ*, No. 2022-CP-40-02144 (S.C. Ct. Comm. Pl. filed Apr. 25, 2022); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239–40 (4th Cir. 1989) (the Court can take judicial notice of state court dockets).

contend the district court's (really the magistrate judge's) reading of Section 1983 would somehow foreclose survivorship claims or other cases brought on another's behalf that meet third-party standing requirements. *See* Dkt. 15, at 59–60. Nothing about Appellees' argument alters the test: if one shows a "close relationship" with the injured person and a "hindrance" to his "ability to protect his own interests," that party has third-party standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (1991).

But that's not what Appellants are doing here. They are not relatives or an estate, and despite their doomsday rhetoric, affirming the district court would not disturb those cases. Nor would it thwart the policy behind Section 1983: juveniles are still able to vindicate their own rights, and even of those similarly situated—indeed many have, *see supra* note 20—and obtain money damages, declaratory and injunctive relief, and attorney's fees if they prevail. *See* 42 U.S.C. §§ 1983 & 1988.

Adopting the plain and straightforward reading of Section 1983 applied by the district court would give effect to the text—as well as Congress's legislative intent—and prevent the limitless invocation of "judicial review at the behest of organizations . . . who seek to do no more than vindicate their own value preferences through the judicial process," *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).

Indeed, Appellants offer no limiting principle to their unbridled theory of organizational standing. The text and purpose of Section 1983 does not stretch so far. And Appellants' reading of Section 1983 has not been "long recognized by the

courts." Dkt. 15, at 61. All the cases Appellants cite are inapposite and either include named plaintiffs[21] or turn on the unique circumstances in voting[22] or First Amendment cases.[23] Title VII and Fair Housing Act cases[24] do not fit either, as conditions of confinement cases, like constitutional rights, are inherently personal. *See Lewis*, 518 U.S. at 350.

Further, while Appellants argue the "benefit of any doubt goes to the plaintiff," Dkt. 15, at 52, the Supreme Court has limited this principle to cases under the APA. *Lexmark*, 572 U.S. at 130. As the Supreme Court "made clear," "the breadth of the zone of interests varies according to the provisions of law at issue, so

---

[21] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Damico v. California*, 389 U.S. 416 (1967); *Battle v. Ledford*, 912 F.3d 708 (4th Cir. 2019); *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011).

[22] *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016); *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637 (M.D.N.C. 2024); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, 283 F. Supp. 3d 393 (M.D.N.C. 2017); *see also supra* 32.

[23] *Allee v. Medrano*, 416 U.S. 802 (1974); *Fort Lauderdale Food not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266 (11th Cir. 2021); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017); *see also* JA51 n.4; *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019) ("Significantly, this Court—along with several other circuits—has held that 'standing requirements are somewhat relaxed in First Amendment cases.'" (citation omitted)). Nor can *Craig v. Boren*, 429 U.S. 190 (1976), bear the weight Appellants place on it. *Craig* was a product of its own unique circumstances.

[24] Both of those statutes use the phrase "aggrieved person," 42 U.S.C. § 2000e-5; 42 U.S.C. § 3613(c)(1), which is defined in the FHA, *id.* § 3602(i).

that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the 'generous review provisions' of the APA may not do so for other purposes." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)). This case concerns constitutional rights relating to the operation of a state's juvenile detention system. And the text of Section 1983 leaves no doubt as to the scope of its reach. *See Owens*, 561 F.2d at 562–63. No "generous review" can manufacture a constitutional injury for Appellants.

Nor can 42 U.S.C. § 1988 help Appellants here. For one, Section 1983 is "adapted to the object," 42 U.S.C. § 1988(a), of providing a remedy for individuals who are deprived of their rights. No further analysis is necessary. For another, both cases Appellants cite looked to state law to determine whether an estate could pursue survivorship claims under Section 1983 for specifically named plaintiffs deprived of constitutional rights who had since died. *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022); *Brown v. Town of Cary*, 706 F.3d 294, 300 (4th Cir. 2013). And federal courts do not recognize the public importance exception to standing used in South Carolina state court. The Court need not go down that rabbit hole either because it is decidedly "inconsistent with" Article III of "the Constitution," 42 U.S.C. § 1988(a), for a federal court to decide a case "*despite the lack of standing*," *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 80, 753 S.E.2d 846, 853 (2014) (emphasis added).

In all events, neither Section 1983 nor 1988 greenlight advocacy groups bringing tenuous claims in their own right—not even under the guise of third-party standing, *see Kowalski*, 543 U.S. at 130—but facilitates filing suit on behalf of the party deprived of constitutional rights by including an incentivizing fee provision, *see* 42 U.S.C. § 1988(b).

Finally, Appellants do not address the proximate cause requirement from *Lexmark*. Because courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," *Lexmark*, 572 U.S. at 132, the Court must also examine "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits," *id.* at 133. Put another way, "the constitutional deprivation alleged here must be the proximate cause of the organizational plaintiffs' injury." JA53. Appellants' alleged organizational harms do not have a "sufficiently close connection" to DJJ's alleged conduct. Their harm, if any, is indirect. Thus, the magistrate judge's correctly found that "when, as here, the organizational plaintiffs' harm is purely derivative of the 'misfortunes visited upon a third person by the defendant's acts,' the proximate cause requirement is not satisfied." JA53 (quoting *Lexmark*, 572 U.S. at 133).

*     *     *

In short, the district court rightly dismissed Appellants' organizational claims under Section 1983 because they alleged no deprivation of *their* Fourteenth

Amendment rights. But Appellants also must show Article III standing and fall within the zone of interests of the statutory causes of action they seek to press. Because they failed on that score as well, the Court should affirm the district court's dismissal of these claims.

IV. *The district court correctly found Appellants failed to state plausible organizational claims for relief under the ADA, Rehabilitation Act, and IDEA.*

To be sure, DJJ did not raise prudential standing as it relates to these statutory disability claims after the amended complaint. But the district court did not dismiss Appellants' organizational statutory disability claims based on prudential standing. Even if it had, Appellants waived any arguments on these claims because they failed to object to the magistrate judge's recommendation of dismissal. In all events, the Court should affirm dismissal of the organizational statutory disability claims because Appellants failed to plausibly allege them.

A. *Appellants waived any challenge to dismissal of their organizational statutory disability claims, which was not based on prudential standing.*

Appellants failed to object to the magistrate judge's R&R on this front and cannot revive their claims on appeal. As the district court recognized, "[t]he Pending Report recommends that all [] Plaintiffs' organizational standing claims be dismissed under Rule 12(b)(6), . . . but Plaintiffs object to the Pending Report's findings only as to the § 1983 claims." *See* JA400 n.15.

On the statutory disability claims, Appellants objected only to the recommended dismissal of their *associational* claims. *See* JA301 (arguing only that they "pleaded exactly what is required under the ADA, Rehabilitation Act, and IDEA" "with respect to their constituents"). In fact, Appellants went on for twelve pages in their objections, discussing only the recommendation to dismiss their associational statutory disability claims. JA299–311. They said nothing about the recommended dismissal of their organizational statutory disability claims.

But "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). The failure to do so waives that issue on appeal. *Id.* Appellants have thus waived any assignments of error to the finding that they failed to plausibly allege organizational claims under the ADA, Rehabilitation Act, and the IDEA.

Regardless, the district court's ruling on the organizational statutory disability claims was not tied to prudential standing. Appellants recognize as much. *See* Dkt. 15, at 64 (noting the magistrate judge did not "recommend[] dismissal on that ground"). And the district court expressly adopted the R&R on Appellants'

"statutory organizational standing claims." JA400 n.15. The Court should therefore reject Appellants' attempt to manufacture error on this ground.

The district court, through adoption of the R&R, found Appellants failed to state organizational statutory disability claims because they "failed to plausibly allege that their own . . . statutory rights were violated" and sought "to vindicate the rights of the juveniles incarcerated at DJJ, not the rights of the organizations themselves." JA246–247.

As to these claims, the magistrate judge found the amended complaint did not cure the initial pleading deficiencies because the organizational "claims of injuries to the organizations were conclusory and the injuries' alleged connection to the . . . statutory violations experienced by the juveniles was tenuous." JA246; *cf. Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216 (4th Cir. 2002) ("But such generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for associational discrimination under the ADA."). For instance, their ADA claim contains a conclusory allegation that "DRSC has suffered harm and will continue to suffer harm for which there is no adequate remedy at law as a direct and proximate cause of DJJ's violation of these rights of South Carolina youth under the ADA." JA138. Their Rehabilitation Act claim includes a nearly identical allegation for Justice 360

and DRSC.  JA140.  Appellants did not even try to relate the claim to their organizations under the IDEA.  *See* JA140–141.

Appellants do not cite the amended complaint for the artful paraphrases that they have alleged such a connection.  *See* Dkt. 15, at 65 ("DJJ's failures to identify and accommodate the needs of children in DJJ custody perceptibly impairs Justice 360's representation of children in DJJ custody and has caused it to expend additional resources to address those issues."); *id.* at 54 ("DJJ's violations of the ADA, RA, and IDEA also inflict traceable, redressable, injuries-in-fact upon DRSC.").  And "[f]or each cause of action, the plaintiffs claim in substantially the same language that DJJ is violating 'rights of South Carolina youth.'"  JA246 (citing paragraphs 368 & 378–79 of the amended complaint on the ADA and Rehabilitation Act causes of action).  "Plainly then, the [] Amended Complaint raises no claims based on organizational standing," JA247, including statutory disability claims.

Appellants' argument that the magistrate judge did not recommend dismissing their organizational statutory disability claims is unavailing.  So is their argument that neither party interpreted her recommendation that way.  DJJ did.  *See* JA259 ("Judge Gossett correctly concluded Plaintiffs (1) failed to state any plausible claims for relief under a theory of organizational standing."); JA315 (similar).  Further, by adopting the magistrate judge's recommendation, the district court did not find Appellants *could not* bring organizational statutory disability claims under the ADA,

Rehabilitation Act, and IDEA as Appellants suggest. Rather, it simply found Appellants failed to plausibly allege them.[25] A preliminary finding that a plaintiff has standing to bring a claim does not translate into a finding that the complaint states a plausible claim for relief. *See Just. 360*, 42 F.4th 450 (finding Justice 360 lacked standing and remanding with instructions to dismiss for lack of jurisdiction, even though the district court found organizational standing but then dismissed the complaint under Rule 12(b)(6)).

The Court should affirm the district court's dismissal of Appellants' federal statutory disability claims.

CONCLUSION

Appellants have held firm to their misguided approach to associational and organizational standing and as-pled constitutional and statutory claims in this case. Because the conclusory allegations in the amended complaint do not save Appellants' effort to litigate conditions-of-confinement claims in the abstract without naming a single juvenile plaintiff, the Court should affirm the district court's dismissal of Appellants' amended complaint via final order.

---

[25] *Cf. A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356, 364 n.4 (4th Cir. 2008) (noting the difference between the ability to bring a claim under the ADA and plausibly stating a claim under the ADA, by distinguishing a prior case).

Respectfully submitted,

/s/ Beth B. Richardson

Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
April 3, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14 point). Excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,911 words. This certified was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

/s/ Beth B. Richardson
Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
April 3, 2025

**CERTIFICATE OF SERVICE**

I certify that on April 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United State Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Beth B. Richardson
Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
April 3, 2025