**No. 25-1032**

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

DISABILITY RIGHTS SOUTH CAROLINA, JUSTICE 360,
SOUTH CAROLINA STATE CONFERENCE OF NAACP

*Plaintiffs-Appellants*,

v.

SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE,
EDEN HENDRICK, in her official capacity as executive director
of the South Carolina Department of Juvenile Justice,

*Defendants-Appellees.*

On Appeal from the United States District Court
District of South Carolina (Rock Hill)
No. 0:22-cv-01338-JDA-PJG
Hon. Jacquelyn D. Austin

### PLAINTIFFS-APPELLANTS' REPLY BRIEF

| | | |
|---|---|---|
| Allen Chaney | Jacob D. Alderdice | Rita Bolt Barker |
| ACLU of South Carolina | Jeremy M. Creelan | WYCHE, PA |
| P.O. Box 1668 | Amit Patel | 200 E. Broad Street |
| Columbia, SC 29202 | JENNER & BLOCK LLP | Suite 400 |
| (864) 372-6681 | 1155 Avenue of the | Greenville, SC |
| achaney@aclusc.org | Americas | 29601 |
| | New York, NY 10036 | rbarker@wyche.com |

Janette Louard          jalderdice@jenner.com
Anthony Ashton          jcreelan@jenner.com
Quiana-Joy Ochiagha     apatel@jenner.com
NAACP
4805 Mt. Hope Drive     William R. Weaver
Baltimore, MD 21215     Mary E. Marshall
qochiagha@naacpnet.org  JENNER & BLOCK LLP
                        1099 New York Ave.
                        NW Suite 900
                        Washington DC 20001
                        wweaver@jenner.com
                        mmarshall@jenner.com

**_Counsel for Plaintiffs-Appellants_**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. III

INTRODUCTION ............................................................................1

ARGUMENT .................................................................................4

I.      The district court correctly held that DRSC has associational standing. ...........................................................................4

     A.      DRSC plausibly alleged "indicia of membership" under *Hunt.* .......................................................................5

     B.      DRSC is not required to identify—much less *name*—individually harmed constituents......................................8

     C.      DRSC's claims do not require individual participation from its constituents.......................................................12

II.      DRSC's associational claims are not moot............................13

     A.      Defendants fail to distinguish or discredit *Mink.* ............14

     B.      *Owens* provides no help to Defendants. ...........................16

     C.      Alternatively, DRSC's claims are capable of repetition yet evading review. ...............................................................17

III.      The district court correctly held that Plaintiffs established organizational standing. .......................................................19

     A.      Justice 360........................................................................20

     B.      DRSC ................................................................................23

     C.      SC NAACP ......................................................................25

IV.      Plaintiffs have statutory standing under Section 1983. ......26

V.      Plaintiffs' statutory claims were wrongly dismissed...........27

i

A.    Plaintiffs' organizational claims under the ADA, RA, and IDEA were mistakenly dismissed for lack of statutory standing. ...........................................................................27

B.    Plaintiffs objected to the dismissal of their associational and organizational claims under the ADA, RA, and IDEA. ...........................................................................29

CONCLUSION .................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Helping Hand, LLC v. Balt. Cnty.,*
515 F.3d 356 (4th Cir. 2008)................................................................28

*Advocacy Ctr. v. Stalder,*
128 F.Supp.2d 358 (M.D. La. 1999).......................................................6

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier*
*Safety Admin.,*
41 F.4th 586 (D.C. Cir. 2022) .............................................................11

*Aiken v. Nixon,*
236 F.Supp.2d 211 (N.D.N.Y. 2002).......................................................6

*Alabama Disabilities Advocacy Program v. Wood,*
584 F. Supp. 2d 1314 (M.D. Ala. 2008) ...............................................13

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC,*
103 F.4th 765 (11th Cir. 2024) ...............................................2, 10, 11

*Ass'n for Retarded Citizens v. Dallas Cnty. Mental Health &*
*Mental Retardation Ctr. Bd. of Trustees,*
19 F.3d 241 (5th Cir. 1994)...................................................................5

*B.R. v. F.C.S.B.,*
17 F.4th 485 (4th Cir. 2021) ...............................................2, 9, 11, 12

*Baker v. Carr,*
369 U.S. 186 (1961).............................................................................23

*Battle v. State of Tennessee,*
2024 WL 4113531 (M.D. Tenn. Sept. 6, 2024)......................................8

*Brown v. Stone,*
66 F.Supp.2d 412 (E.D.N.Y. 1999) .......................................................6

iii

*Camreta v. Greene,*
 563 U.S. 692 (2011) ..................................................................... 14

*Democratic Nat'l Comm. v. Bostelmann,*
 488 F. Supp. 3d 776 (W.D. Wis. 2020) ...................................... 25

*Democratic Party of Va. v. Brink,*
 599 F. Supp. 3d 346 (E.D. Va. 2022) .......................................... 4

*Disability Rts. N. Carolina v. N. Carolina State Bd.*
 *Elections,*
 2022 WL 2678884 (E.D.N.C. 2022) .............................................. 5

*Disability Rts. Pennsylvania v. Pennsylvania Dep't of Hum.*
 *Servs.,*
 No. 1:19-CV-737, 2020 WL 1491186 (M.D. Pa. Mar. 27,
 2020) ................................................................................................. 5

*Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of*
 *Supervisors,*
 522 F.3d 796 (7th Cir. 2008) ...................................................... 25

*Doe v. Pub. Citizen,*
 749 F.3d 246 (4th Cir. 2014) ........................................................ 9

*Doe v. Stincer,*
 175 F.3d 879 (11th Cir. 1999) .......................................... 3, 4, 5, 8

*Food & Drug Admin. v. All. for Hippocratic Med.,*
 602 U.S. 367 (2024) ..................................................................... 19

*Gerstein v. Pugh,*
 420 U.S. 103 (1975) ..................................................................... 17

*Goldstein v. Coughlin,*
 83 F.R.D. 613 (W.D.N.Y. 1979) .................................................... 6

*Harper v. Virginia Bd. of Elections,*
 383 U.S. 663 (1966) ..................................................................... 23

iv

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ...................................................... 20, 21, 23, 24

*Howerton v. Fletcher,*
213 F.3d 171 (4th Cir. 2000) ............................................................ 26

*Hunt v. Washington St. Apple Growers Comm'n,*
432 U.S. 333 (1977) .............................................................. 2, 4, 7, 8

*Incumaa v. Ozmint,*
507 F.3d 281 (4th Cir. 2007) ............................................................ 16

*Indiana Prot. & Advoc Servs. Comm'n,*
642 F. Supp. 2d at 877 ...................................................................... 6

*Inmates v. Owens,*
561 F.2d 560 (4th Cir. 1977) ...................................................... 16, 26

*James v. Jacobson,*
6 F.3d 233 (4th Cir. 1993) ................................................................. 9

*Jones v. Bock,*
549 U.S. 199 (2007) ........................................................................ 13

*Kenny v. Wilson,*
2020 WL 1515527 (D.S.C. Mar. 30, 2020) ........................................ 5

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
567 U.S. 298 (2012) ........................................................................ 14

*Lira v. Herrera,*
427 F.3d 1164 (9th Cir. 2005) .......................................................... 13

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................................ 12

*Maryland Shall Issue,*
963 F.3d at 362 ............................................................................... 21

*McGowan v. Maryland,*
366 U.S. 420 (1961) ........................................................................ 23

v

*Memphis A. Philip Randolph Inst. v. Hargett,*
  2 F.4th 548 (6th Cir. 2021) ...................................................... 18

*Md. Highways Contractors Ass'n, Inc. v. Maryland,*
  933 F.2d 1246 (4th Cir. 1991) ................................................. 19

*Michigan Prot. & Advocacy Servs., Inc. v. Babin,*
  799 F. Supp. 695 (E.D. Mich. 1992) .................................... 5, 6

*Missouri Protection & Adv. Servs., Inc. v. Carnahan,*
  499 F.3d 803 (8th Cir. 2007) ..................................................... 5

*MOAC Mall Holdings LLC v. Transform Holdco LLC,*
  598 U.S. 288 (2023) .................................................................. 15

*N.C. State Conf. of the NAACP v. Raymond,*
  981 F.3d 295 (4th Cir. 2020) ................................................... 20

*NAACP v. Alabama ex rel. Patterson,*
  357 U.S. 449 (1958) .................................................................. 10

*Nat'l Fed. of the Blind,*
  407 F. Supp. 3d at 533 .............................................................. 25

*New Jersey Prot. & Advocacy, Inc. v. Davy,*
  2005 WL 2416962 (D.N.J. Sept. 30, 2005) .............................. 6

*OCA-Greater Houston v. Texas,*
  867 F.3d 604 (5th Cir. 2017) .............................................. 22, 23

*Ohio v. Yellen,*
  53 F.4th 983 (6th Cir. 2022) ................................................... 14

*Oregon Advocacy Center v. Mink,*
  322 F.3d 1101 (9th Cir. 2003) ........................................ *passim*

*Phillips,*
  883 F.3d at 405 ......................................................................... 22

*Planned Parenthood South Atlantic v. Wilson,*
  26 F.4th 600 (4th Cir. 2022), *vacated on other grounds,*
  No. 21-1369, 2022 WL 2900658 (4th Cir. July 21, 2022) ...... 26

*Priorities USA v. Nessel,*
    462 F. Supp. 3d 792 (E.D. Mich. 2020) ........................................... 3, 23

*Prot. and Advocacy, Inc. v. Murphy,*
    1992 WL 59100 (N.D .Ill. 1992) ........................................................... 6

*Risinger v. Concannon,*
    117 F.Supp.2d 61 (D. Me. 2000) .......................................................... 6

*Rubenstein v. Benedictine Hosp.,*
    790 F.Supp. 396 (N.D.N.Y. 1992) ........................................................ 6

*Speech First, Inc. v. Shrum,*
    92 F.4th 947 (10th Cir. 2024) ........................................................ 9, 11

*Students for Fair Admissions v. Harvard,*
    600 U.S. 181 (2023) ............................................................................. 7

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ......................................................................... 2, 10

*Timothy B. v. Kinsley,*
    2024 WL 1350071 (M.D.N.C. Mar. 29, 2024) ...................................... 5

*Torres v. United States Dep't of Homeland Sec.,*
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) .............................................. 22

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................................... 12

*United Food & Com. Workers Union Loc. 751 v. Brown Grp.,
    Inc.,*
    517 U.S. 544 (1996) ........................................................................... 12

*United States v. Springer,*
    715 F.3d 535 (4th Cir. 2013) ............................................................. 17

*United States v. Students Challenging Regulatory Agency
    Procedures,*
    412 U.S. 669 (1973) ....................................................................... 3, 23

vii

*Univ. Legal Servs., Inc. v. Saint Elizabeths Hosp.*,
 2005 WL 3275915 (D.D.C. July 22, 2005) ............................................. 6

*Wilson v. Thomas*,
 43 F. Supp. 3d 628 (E.D.N.C. 2014) .................................................. 3, 5

**Statutes**

20 U.S.C. § 1412(a)(1)(A) ....................................................................... 24

42 U.S.C. § 1997e .................................................................................. 13

42 U.S.C. § 10801 ............................................................................... 6, 13

42 U.S.C. § 10805 .................................................................................... 6

**Other Authorities**

42 C.F.R. § 51.42 ................................................................................... 24

Fed. R. Civ. P. 5.2 ................................................................................... 9

SOUTH CAROLINA DEP'T OF JUVENILE JUSTICE, *Data Resource
 Guide 2019-2020* ............................................................................... 18

## INTRODUCTION

Defendants operate dangerous,[1] overcrowded,[2] and understaffed[3] facilities. The State's data shows that violence is worsening,[4] isolation is commonplace,[5] and rehabilitative services are completely absent.[6] Because these conditions are systemic, no child is spared.[7] Even those who avoid physical attack still live in perpetual fear, anxiety, and hypervigilance. Some even choose to stay in isolation out of fear for their physical safety.

To escape liability for these devastating and unlawful conditions, Defendants lash out at Plaintiffs for pushing "policy preferences" and press the Court to radically reshape standing jurisprudence to exclude Plaintiffs' claims. But neither Defendants' invocation of a years-old DOJ settlement (that they're out of compliance with) nor the Governor's treatise on federalism and gripes about federal oversight in unrelated

---

[1] JA89-91 (648 sick call appointments for juvenile/juvenile aggression, 12 emergency room referrals, and 4 hospitalizations due to injury *in one month*).

[2] JA84 (JDC at 166% capacity), JA115 (85 children sleeping in hallways and common areas), JA116 (7 security staff supervising 130 children).

[3] JA95, JA115.

[4] JA91 (67% increase in critical incidents).

[5] JA96-102, JA116 (514 uses of isolation in one month).

[6] JA103-105 (4 hours of education *per week*).

[7] JA115-118.

matters can overcome the dearth of legal support that Defendants marshal.[8]

Defendants' Response Brief raises two new arguments, both of which were correctly rejected below.

*First*, Defendants challenge the thoroughly unremarkable proposition that Disability Rights South Carolina ("DRSC") can litigate on behalf of its constituents. Specifically, Defendants argue that DRSC cannot assert associational standing because (a) it lacks indicia of membership, and (b) it failed to identify its harmed constituents *by name*. But the Court cannot (as Defendants do) ignore Plaintiffs' well-pleaded allegations. DRSC represents all detained children with mental illness and is governed and led by individuals who, like its constituents, have received or are receiving mental health services. JA126. As courts throughout this Circuit (and beyond) have long held, that establishes sufficient indicia of membership to assert associational claims under *Hunt v. Washington St. Apple Growers Commission*, 432 U.S. 333 (1977).

Nor does *Summers v. Earth Island Institute*, 555 U.S. 488 (2009) require DRSC to identify its harmed members by name. In fact, *Summers* instructs that identification is unnecessary here "where *all*

---

[8] The argument that this case improperly attacks Defendants' 2022 settlement with DOJ was properly rejected below, JA256, and is unpreserved for appellate review. JA385 n.8.

the members of the organization are affected by the challenged activity." 555 U.S. at 498-99. Aside from that, there is also "no persuasive reason to think that the *United States Constitution* concerns itself with the particular name by which a litigant is called." *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772 (11th Cir. 2024). This Court's precedent is in accord. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 494 (4th Cir. 2021).

*Second*, Defendants argue that Justice 360 cannot establish organizational standing because representing children facing lengthy sentences "is not ... part of [its] core services." But Justice 360 *pleaded* that juvenile defense is part of its mission and, at the Rule 12 stage, that must be treated as true. Defendants also argue that their actions did not cause a "significant drain" on Justice 360's resources. But an injury-in-fact need not measure more than an "identifiable trifle," *United States v. Students Challenging Regulatory Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) ("*SCRAP*"), "and the impairment of [Justice 360's] operations need only be 'perceptible' to suffice," *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 806-07 (E.D. Mich. 2020).

Plaintiffs have established standing and pleaded viable claims for relief. The Court should reverse.

3

# ARGUMENT

## I.   The district court correctly held that DRSC has associational standing.

The district court correctly held that DRSC has associational standing to assert claims on behalf of its disabled constituents. JA390-394. In their *response* brief, Defendants try to unsettle Fourth Circuit law with two novel arguments.

*First,* Defendants ask this Court to defy congressional intent and hold, for the first time in this circuit, that P&As cannot assert claims on behalf of their constituents. For reasons forcefully explained by the Ninth and Eleventh Circuits, that argument fails. *Doe v. Stincer,* 175 F.3d 879, 886 (11th Cir. 1999) (holding that P&As satisfy the *Hunt* test for membership because their constituents "possess the means to influence the priorities and activities"); *Oregon Advoc. Ctr. v. Mink,* 322 F.3d 1101, 1109-11 (9th Cir. 2003) (same); *see also Wilson v. Thomas,* 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) (same).

*Second,* Defendants ask this Court to add a new requirement to Article III—that organizational plaintiffs must *name* their members to establish standing. But neither *Summers* nor this Court's standing doctrine support such a wooden rule. If allegations in the complaint support a reasonable inference that an organization has at least one member with standing, Article III is satisfied. *See, e.g., Democratic Party of Va. v. Brink,* 599 F. Supp. 3d 346, 355 n.10 (E.D. Va. 2022).

4

A.    DRSC plausibly alleged "indicia of membership" under *Hunt.*

Although DRSC does not have "traditional members," its disabled constituents "possess all of the indicia of membership in an organization" necessary for it to assert claims on their behalf. JA 392 (quoting *Hunt*, 432 U.S. at 345). DRSC is statutorily mandated to pursue "administrative, legal, and other appropriate remedies on behalf of all individuals with mental illness," and its board "includes significant representation of individuals with mental illness ...and family members, guardians, advocates, or authorized representatives of such individuals." JA393. Thus, like a traditional membership-based organization, the constituents of DRSC "possess the means to influence the priorities and activities" the group undertakes. *Stincer*, 175 F.3d at 886.

As Defendants point out, there is a circuit split on whether P&As have "members" within the meaning of *Hunt*. But Defendants fail to disclose that opinions they cite—*Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241 (5th Cir. 1994) ("*ARC*") and *Missouri Protection & Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007)—are squarely in the minority, and have never been followed in this circuit. *See, e.g.*, *Timothy B. v. Kinsley*, 2024 WL 1350071, *10-11 (M.D.N.C. Mar. 29, 2024). The overwhelming weight of federal authority—

5

including long-standing decisions from the Eleventh and Ninth Circuits, and district courts within this Circuit—agree that P&As' constituents are members under *Hunt*. *E.g.*, *Mink*, 322 F.3d at 1109-11; *Stincer*, 175 F.3d at 885-86; *Wilson*, 43 F. Supp. 3d at 632; *Kinsley*, 2024 WL 1350071, at *10; *Disability Rts. N.C. v. N.C. State Bd. Elections*, 2022 WL 2678884, at *3 (E.D.N.C. 2022); *Kenny v. Wilson*, 2020 WL 1515527, at *4-5 (D.S.C. Mar. 30, 2020). As other courts have observed, this result better respects the "clear[] intention of Congress" that P&As be allowed to "represent and, if necessary, litigate on behalf of individuals suffering from developmental disabilities." *See, e.g.*, *Mich. Prot. & Advocacy Servs., Inc. v. Babin*, 799 F. Supp. 695, 702 n.12 (E.D. Mich. 1992). Unsurprisingly, then, the district court's holding "aligns with the panoply of cases concluding that P&A systems have associational standing," *Disability Rts. Penn. v. Penn. Dep't of Hum. Servs.*, 2020 WL 1491186, at *8-9 & n.6 (M.D. Pa. Mar. 27, 2020) (collecting cases); *see also Ind. Prot. & Advocacy Servs. Comm'n*, 642 F. Supp. 2d at 877 ("[C]ourts around the country have rejected similar standing challenges to protection and advocacy services.") (collecting cases).[9]

_____

[9] *See also N.J. Prot. & Advocacy, Inc. v. Davy*, 2005 WL 2416962, at *2-3 (D.N.J. Sept. 30, 2005); *Univ. Legal Servs., Inc. v. Saint Elizabeths Hosp.*, 2005 WL 3275915, at *4-5 (D.D.C. July 22, 2005) ("By providing [P&As the] authority to sue on behalf of their constituents, Congress has cleared away any non-constitutional impediments for ULS"); *Aiken v. Nixon*, 236 F.Supp.2d 211, 224 (N.D.N.Y. 2002) (finding

6

The district court's holding is in the majority for good reason: it reflects the correct reading of *Hunt*. An organization need not be a classic membership organization to assert claims on behalf of its constituents. As the Supreme Court noted in *Students for Fair Admissions v. Harvard*, 600 U.S. 181 (2023), *Hunt* itself concerned a state agency that had no members at all. *Hunt* explained that even a non-membership organization, like the apple growers' commission in that case, may sue on behalf of its constituents so long as it demonstrates indicia of membership, 432 U.S. at 344, such as: that the organization serves a specialized group of individuals; that the organization has a direct stake in the outcome of the litigation; that the organization is accountable to its constituents; and that its constituents have influence over the organization's actions. *See Mink*, 322 F.3d at 1112.

DRSC pleaded sufficient facts to demonstrate "indicia of membership." DRSC was created exclusively to serve the mentally ill population in South Carolina, JA119, and it specifically works on behalf of the children injured by Defendants, JA119-120. Further, DRSC

---

that "in light of the fact that the Court has concluded that [the individual plaintiff] has standing to bring his individual claim, there are also sufficient allegations to find that [the P&A plaintiff] has associational standing to bring the same claims on behalf of its constituents."); *Risinger v. Concannon*, 117 F.Supp.2d 61, 68-70 (D. Me. 2000); *Advocacy Ctr. v. Stalder*, 128 F.Supp.2d 358, 365-66 (M.D. La. 1999).

7

alleges that its Board of Directors includes significant representation of individuals with mental illness and that its activities are guided by an advisory council "comprised primarily of individuals who have received or are receiving mental health services." JA120. Thus, "[i]n a very real sense, ...[DRSC] represents [detained children with mental illness] and provides the means by which they express their collective views and protect their collective interests." *Hunt*, 432 U.S. at 345. As other courts routinely conclude, these allegations—buttressed by Congress's intent for DRSC to litigate on behalf of its constituents—are sufficient to allow DRSC to assert associational standing. *See, e.g., Stincer*, 175 F.3d at 884-86 ("[T]he very purpose of PAIMI was to confer standing on protection and advocacy systems ...as representative bodies charged with the authority to protect and litigate rights of individuals with mental illness.").

This Court should therefore follow the strong consensus in the lower courts and hold that DRSC, as a P&A, can assert the claims of its injured members under *Hunt*.

### B. DRSC is not required to identify—much less *name*—individually harmed constituents.

Plaintiffs' Opening Brief argues that the district court was wrong to limit DRSC's associational standing to only those children identified in the FAC. *See* Br. at 30-33; *see also Battle v. State of Tennessee*, 2024 WL 4113531, at *13 (M.D. Tenn. Sept. 6, 2024) ("[T]here is no basis for

8

treating [Disability Rights Tennessee]'s standing as limited solely to the injuries of the specific named plaintiffs."). But Defendants press the other way, arguing that Article III required DRSC to identify its injured constituents *by name*. The district court was right to reject that argument.

To start, Fed. R. Civ. P. 5.2 *prohibits* DRSC from identifying its injured constituents by name. Rule 5.2(a)(3), warns that, "unless the court orders otherwise," a filing that contains "the name of an individual known to be a minor ...may only include ...the minor's initials." Additionally, litigants in this Circuit are allowed to proceed pseudonymously when it is shown that "the party's stated interest in anonymity" overrides "the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Pub. Citizen*, 749 F.3d 246, 273-74 (4th Cir. 2014). Given that anonymous and pseudonymous litigation is permitted (and sometimes required), and that neither the courts nor the rules of civil procedure have any power to relax the demands of Article III, Defendants' argument that standing requires *the names* of injured parties makes no sense. *See B.R.*, 17 F.4th at 494 ("A plaintiff's failure to disclose her name to the court at the time she files a complaint is immaterial [under Article III]."); *see also Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) ("Longstanding and well-established doctrine in the federal courts

9

establishes that anonymous persons may have standing to bring claims.").

*Summers* does not hold otherwise. There, the Supreme Court ruled that a plaintiff organization lacked standing, not because it failed to name its injured members, but because it did not identify *any* member who would suffer injury in any way. 555 U.S. at 498. Instead, the plaintiff in *Summers* rested its standing on "a statistical probability that some of those members are threatened with concrete injury." *Id.* Far from making new law, *Summers* merely rejected that as a "novel approach to the law of organizational standing" that "would make a mockery of … prior cases." *Id.* at 498

But here, Plaintiffs do not rely on statistical probabilities nor the threat of future injuries. Rather, DRSC alleges that it represents "dozens of children across all 5 of DJJ's secure facilities," JA121, and that *all* of those children are *currently* exposed to unconstitutional levels of violence, isolation, denial of education and rehabilitative services, and statutory violations, JA130-132. *Summers* explicitly embraces that type of claim as an adequate basis for associational standing. 555 U.S. at 498-99 (explaining that there is no need to identify members "where *all* the members of the organization are affected by the challenged activity." (citing *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958)). The FAC then also identifies nine specific children (pseudonymously described as "Child 5" through "Child

10

13") as constituents of DRSC and describes the harms they endured from Defendant's unconstitutional conduct. JA127-129. Combined, these allegations plainly establish that DRSC has standing through its members.

Other circuits have rejected Defendants' argument as a total misread of *Summers*. In *Speech First, Inc.*, the Tenth Circuit held that a naming requirement "was clearly not the intent of the Court [in *Summers*]," and that "[t]he opinion provided no hint, much less an emphatic statement, that it was abrogating decades of precedent." 92 F.4th at 949. Likewise, in *Advocates for Highway & Auto Safety v. Federal Motor Carrier Safety Administration*, the D.C. Circuit held that de-identified survey responses from union members were sufficient to establish associational standing. 41 F.4th 586, 594 (D.C. Cir. 2022) ("To be sure, we do not know the names of the individuals in the survey, but anonymity is no barrier to standing on this record."). Finally, the Eleventh Circuit also rejected "a hard-and-fast constitutional requirement that an organizational plaintiff 'identify' the members it represents *by name*," explaining that there is "no persuasive reason to think that the *United States Constitution* concerns itself with the particular name by which a litigant is called." *Fearless Fund*, 103 F.4th at 772. And although this Court has yet to address the argument within the context of associational standing, its reasoning in the individual-standing context resolves the issue. *See B.R.*, 17 F.4th at 493-94.

11

Even if DRSC was required to identify members, it cleared that hurdle. Its allegations about Children 5-13 prove that the case is a "real controversy with real impact on real persons," *B.R.*, 17 F.4th at 493 (quoting *TransUnion*, 594 U.S. at 424), and its failure to disclose the children's names "in no way detracts" from whether it satisfied Article III, *id.* at 494.

C.   <u>DRSC's claims do not require individual participation from its constituents.</u>

Defendant's final argument is that DRSC cannot establish associational standing because its claims require the participation of individual litigants. But as the district court correctly held, "personal participation of Disability Rights's constituents is not required …because Plaintiffs seek only prospective injunctive relief." JA392 n.12 (citing *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members.")).

Defendants' arguments on this prong are *non sequiturs*. First, they argue that individual participation is necessary for the district court to continuously evaluate whether it has jurisdiction. But as they concede, this is simply Defendants' mootness argument dressed up as a standing argument. And even if it were not—the argument would fail. Standing is assessed at the time the complaint is filed. *Lujan v. Defs. of*

12

*Wildlife*, 504 U.S. 555, 570 n. 5 (1992). And at the time of the FAC, as alleged, there were numerous DRSC constituents who were detained in DJJ and experiencing statutory and constitutional harms because of Defendant's actions. This is sufficient to establish standing.

Second, Defendants argue that individual participation is necessary to determine compliance with the Prison Litigation Reform Act. Resp. at 20. But Defendants did not move for dismissal under the PLRA and thus forfeited the argument. JA149-179; *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA."); *Lira v. Herrera*, 427 F.3d 1164, 1171 (9th Cir. 2005) ("[The PLRA] establishes an affirmative defense, waived if the defendant does not raise it."). Beyond being waived, DRSC is also not a "prisoner" and need not exhaust under the PLRA. *See* 42 U.S.C. § 1997e; *see, e.g.*, *Ala. Disabilities Advocacy Program v. Wood*, 584 F. Supp. 2d 1314, 1316 (M.D. Ala. 2008) ("[Alabama Disabilities Advocacy Program] is clearly not a 'prisoner' under the statute."). For both reasons, the PLRA is no basis for rejecting DRSC's associational standing.

## II.   DRSC's associational claims are not moot.

DRSC represents all "individuals with mental illness who are receiving care or treatment in the State." JA125; 42 U.S.C. §§ 10801, *et seq*. Here, by DJJ's own admission, that comprises "the majority" of

13

children in DJJ custody. JA130. Without exception, those child-constituents are held in understaffed and overcrowded facilities where unconstitutional violence, JA115-116, isolation, JA116-117, and neglect, JA117-118, are daily facts of life. *See, e.g.*, JA129-131. Without exception, those child-constituents are denied therapy, education, or any meaningful access to rehabilitative care.

Even without Children 5-13, these allegations establish that DRSC "continue[s] to have a live interest [in the case]," *Ohio v. Yellen*, 53 F.4th 983, 990 (6th Cir. 2022), maintains "concrete adverseness" with Defendants, *Camreta v. Greene*, 563 U.S. 692, 701 (2011), and it is not "impossible" that the court may grant "effectual relief," *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). As a result, its claims are not moot.[10]

> A.    Defendants fail to distinguish or discredit *Mink*.

The Ninth Circuit's sound decision in *Mink* should be followed here. The facts are virtually identical: a P&A alleged an "ongoing, pervasive and systemic problem" with state detention facilities, and the defendants argued that its claims were mooted when the seven constituents identified in the complaint were released later in the case. 322 F.3d at 1116-18. The Ninth Circuit properly analyzed whether the

---

[10] Defendants gesture at waiver but cite no authority suggesting that a party must move to reconsider an order of dismissal before filing an appeal.

claims of the P&A *itself* were moot—not the released constituents—and held that they were not, because there continued to be other unnamed constituents of the P&A "suffering the deprivation" at issue. *Id.* at 1117-18. As here, it was the P&A asserting claims, and thus the court rightly focused on the continuing harms to the P&A's members. DRSC and its members are entitled to the same.

Like the district court, Defendants fail to meaningfully distinguish *Mink*. Defendants argue that this case is different because there is no named plaintiff, but the named plaintiff in *Mink* was mooted out upon their release, and the court's analysis of the P&A's mootness had nothing to do with that plaintiff. *Id.* at 1116. As in *Mink*, DRSC is not a detained complainant who was released, it is a P&A with constituents actively being harmed in DJJ detention. Thus, it would still benefit from court-ordered relief.[11]

---

[11] Defendants' other argument for distinguishing *Mink* appears to rest on the contention that the plaintiffs in *Mink* had a stronger case on the merits, Resp. at 30 (noting that the defendant in *Mink* had admitted its unlawful policy), but such merits arguments are not appropriate in considering mootness. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (noting that Supreme Court case law "disfavor[s] . . . mootness arguments" about the plaintiff's ultimate likelihood of success).

B.    *Owens* provides no help to Defendants.

Defendants' heavy reliance on *Inmates v. Owens*, 561 F.2d 560, 561 (4th Cir. 1977) is similarly misplaced.[12] In *Owens*, nine individual inmates sought declaratory relief regarding allegedly deficient conditions of incarceration, such as receipt of an improper diet or being denied access to the law library. *Id.* The district court dismissed the case because none of those individuals were subject to the deprivations themselves. *Id.* While the appeal was pending, all nine plaintiffs were released, and thus even more plainly were not affected by the alleged violations. *Id* at 562.

This case is a far cry from *Owens*. DRSC represents constituents from across DJJ's facilities who are presently suffering from the systemic violations that are detailed in the complaint.[13] Other than preferring its outcome, Defendants offer no reasoned basis for applying *Owens* here.

---

[12] Defendants suggest that they implicitly raised mootness because they "raised *Owens* early and often." Resp. at 26 n. 12. But they only cited *Owens* in the district court for reasons unrelated to mootness and never raised mootness as a basis for dismissal.

[13] Similar to *Owens*, this Circuit's decision in *Incumaa v. Ozmint* deals only with an individual plaintiff who brought claims related to his conditions of incarceration, and was released, thus mooting those claims. 507 F.3d 281, 282-83 (4th Cir. 2007)

16

C.    Alternatively, DRSC's claims are capable of repetition yet evading review.

Even if this Court were to conclude that DRSC's associational claims are moot, DRSC established that its claims satisfy an established exception to mootness—capable-of-repetition-yet-evading-review—because DRSC's child constituents are held in juvenile detention for too short a time for DRSC to litigate its claims, and DRSC will continue to be subjected to Defendants' violations. *See* Br. 33-38.

Defendants respond in two ways. First, Defendants dispute that it was "impossible" to fully litigate DRSC's claims based on Children 5-13 before they were released. Resp. 33-34. That is absurd. For one, a litigant invoking the capable-of-repetition-yet-evading-review doctrine need not show that it is truly "impossible" to ever fully litigate a claim. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (holding that individuals in pretrial detention fall within this exception because it is "most unlikely" that their claims could be decided before they are released or convicted).[14] But beyond that, Defendants' argument—that the claims of DRSC's constituents are not inherently transitory—is proven ridiculous by the record in this case. As Plaintiffs' Opening Brief

---

[14] Indeed, the only time the word "impossible" is mentioned in *United States v. Springer* is not with respect to the "capable of repetition" exception, but in the standard required to show mootness: that a party's claims are only moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." 715 F.3d 535, 540 (4th Cir. 2013) (quoting *Knox*, 567 U.S. at 307).

17

explained, 447 days elapsed between the filing of the FAC and the district court's operative order of dismissal. *Compare* JA69 (9/28/2023), *with* JA375 (12/18/2024). That is more than 2.5 times as long as the average commitment to DJJ's long term facility, BRRC, and almost *28 times* as long as the average stay at JDC.[15] Therefore, in the vast majority (if not all) cases seeking injunctive relief, a child-constituent will be released (and become moot) before even reaching discovery. Defendants' reference to dockets of un-moot-able damages claims cannot disguise the absolute certainty that these claims are "inherently transitory."

Next, Defendants argue that DRSC's identified constituents—not DRSC itself—should be treated as the "same complaining party" for whom the violations might recur. Resp. at 33. But "[t]o begin with an obvious, but necessary point, it is [DRSC] that is a party to this case, *not* [Child 5-13]." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 569 (6th Cir. 2021) (Moore, J., dissenting); *see also id.* at 561 (considering whether "*other [unnamed] members of the plaintiff organizations*" will be harmed (emphasis added)). Defendants' cases about individual plaintiffs do nothing to divest DRSC—the actual plaintiff in this case—from its status as the "complaining party." A case

---

[15] SOUTH CAROLINA DEP'T OF JUVENILE JUSTICE, *Data Resource Guide 2019-2020*, https://djj.sc.gov/sites/djj/files/Documents/PbS%20PDFs/Resource%20Guide%20FY%202019-2020%20FINAL.pdf (last visited Apr. 23, 2025).

18

is only moot if it is "impossible" for any relief to be granted to the "prevailing party." Because, after trial, *DRSC* (not its members) will be the prevailing party, DRSC is the relevant "complaining party" for mootness.

Finally, Defendants remark that "Appellants chose not to include a named plaintiff or pursue this case as a class action." Resp. at 34. But DRSC is a party, not counsel. It cannot simply "choose" to bring this case as an individual person or as a class action on behalf of other P&As. DRSC filed suit in the manner contemplated for it by law—to protect mentally disabled children, including those still in DJJ's custody, from severe harms. Defendants may wish that some other party filed suit, but DRSC's claims are not moot.

## III. The district court correctly held that Plaintiffs established organizational standing.

Organizational standing requires "the same inquiry as in the case of an individual," *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991): an organizational plaintiff must allege an injury-in-fact, caused by the defendant, that can be redressed by a favorable decision from the court. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024) ("*Hippocratic Medicine*"); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19 (1982). An organization is injured when its mission is "perceptibly impaired" and its resources are diverted. *Havens Realty*, 455 U.S. at 379. As this Court

19

put it: "when an action perceptibly impairs an organization's ability to carry out its mission and consequently drains ...the organization's resources, there can be no question that the organization has suffered an injury-in-fact." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (cleaned up) (quoting *Havens Realty*, 455 U.S. at 379).

Although Plaintiffs need but one party with standing for each claim, *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014), every Plaintiff organization has standing here.

### A.    Justice 360

Justice 360 is a nonprofit organization that provides direct representation to children charged with serious offenses. JA74. Its ability to meet with and advocate for its clients has been "perceptibly impaired" by Defendants' conduct. *See Havens Realty*, 455 U.S. at 379.

Justice 360 alleges that Defendants expose its clients to "near-daily violence, frequent use of short- and long-term isolation, lack of treatment and accommodation for disabled youth and youth with mental illness, denial of appropriate educational services, unsanitary conditions (spoiled food, trash, lack of clean clothes or linens), and denial of counseling and mental health treatment." JA118. As a result, Justice 360 clients show up at attorney visits "sleep-deprived, exhausted, and anxious, and they struggle to focus on their cases."

20

JA119. Attorney visits take "twice as long," and attorneys must redirect their time to helping clients process or find solutions for the dangerous and horrid conditions that Defendants perpetuate. JA119. Because each representation takes more time than it should, Justice 360 "cannot represent as many children." JA119. Justice 360 has directed resources away from direct representation and towards combatting Defendants' misconduct. For example, it has conducted trainings and circulated model family court pleadings "to help practitioners seek relief from, or avoid placement in, DJJ facilities because of the unconstitutional conditions that persist there." JA124. Because Justice 360 will "always represent at least one client who is being held at JDC," its injuries will persist until conditions at JDC are safe and rehabilitative. JA124.

As the district court correctly (and repeatedly) held below, these allegations establish that Defendants' unlawful treatment of detained youth has "perceptibly impaired" Justice 360's mission and forced the organization to "expend resources." *See, e.g.*, JA33-34; JA388-89. Indeed, Justice 360's allegations "are closely analogous to the allegations the *Havens Realty* Court held were sufficient to establish organizational standing." JA389 (citing *Havens Realty*, 455 U.S. at 379).

Defendants dispute Justice 360's standing on two unavailing grounds.

*First,* Defendants argue that Justice 360 cannot establish standing because representing children facing lengthy sentences "is not ... part of [Justice 360's] core services." Resp. at 24. But the FAC alleges the opposite, JA74, JA118, and Defendants offer no basis for inverting the pleading standard and disregarding Justice 360's description of its own mission and activities. *See United States v. Phillips*, 883 F.3d 399, 405 (holding that, under Rule 12(b)(1), the court "views the evidence in the light most favorable to [the plaintiff] and draws all reasonable inferences in [its] favor."). Thus, this argument fails.

*Second*, Defendants argue that Justice 360 lacks standing because their mistreatment of Justice 360's clients did not cause the organization to divert *enough* resources to satisfy *Havens*. Resp. at 22-24 (arguing that Defendants did not "cause[] a *significant* drain on [Justice 360's] resources." (emphasis added)). But Article III's injury-in-fact requirement "is qualitative, not quantitative, in nature." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017). It serves only "to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *SCRAP*, 412 U.S. at 689 n.14. To accomplish that, an injury-in-fact "need not measure more than an 'identifiable trifle.'"

22

*OCA-Greater Houston*, 867 F.3d at 612 (quoting *SCRAP*, 412 U.S. 689 n.14).[16]

An organization carries no extra burden to demonstrate injury. As Judge Davis, now of the Sixth Circuit, explained in *Priorities USA v. Nessel*, "there is no threshold of 'significance' of the injury to the organization that must be exceeded to render the harm sufficiently concrete under Article III …even unquantifiable and intangible harms may qualify as injuries in fact, and the impairment of the organizations' operations need only be 'perceptible' to suffice." 462 F. Supp. 3d 792, 806-07 (E.D. Mich. 2020).

Defendants' quibbles about the severity of Justice 360's injuries lack merit. Because Justice 360's activities are "perceptibly impaired" and its resources diverted by Defendants' mistreatment of detained youth, it has standing under Article III. *Havens Realty*, 455 U.S. at 379.

> B.    DRSC

Defendants' conduct also "perceptibly impair[s]" DRSC's core activities and works a "consequent drain" on its resources. *Havens Realty*, 455 U.S. at 379.

---

[16] As the Supreme Court has pointed out, its jurisdiction has been properly invoked to address a fraction of a vote, *Baker v. Carr*, 369 U.S. 186 (1961); a $5 fine, *McGowan v. Maryland*, 366 U.S. 420 (1961); and a $1.50 tax, *Harper v. Va. Bd. of Elections*, 383 U.S. 663 (1966). *See SCRAP*, 412 U.S. at 689 n.14

By statute, DRSC represents "individuals with mental illness who are receiving care or treatment in the State." JA125-26. As part of its duties, DRSC routinely monitors DJJ facilities, JA130, *see* 42 C.F.R. § 51.42, meets with detained children and with DJJ staff, and attends staffing meetings to discuss treatment plans for children with disabilities. JA130.

DRSC's ability to meet with its statutory constituents and advocate on their behalf has been impaired by Defendants. For example, Defendants' failure to adequately screen children for mental illness both violates the IDEA, *see* 20 U.S.C. § 1412(a)(1)(A) (child-find duty), and impairs DRSC's core activities and drains its resources. JA108, JA126, JA130, JA140-41. Because Defendants fail to identify children with mental illness, DRSC's monitors and personnel must dedicate additional resources to the task. JA127. DRSC is not equipped for that responsibility, and not knowing which children are entitled to its services impedes its ability to provide support to those children. JA127.

Likewise, Defendants' failure to ensure basic physical safety interferes with DRSC's monitoring access. Children are afraid to talk with DRSC monitors for fear of retaliation, and sometimes facilities are so violent that monitors must go together or not at all. JA126-27; JA130. The rampant use of isolation against children with disabilities similarly obstructs DRSC's access to its constituents and makes them

24

less willing or able to explain the issues they are facing. JA131, JA120. These allegations establish organizational standing. *Disability Rts. Wisc., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008) ("Expenditure of additional resources by a disability rights advocacy group in representing disabled members as the result of governmental conduct ...[can] amount to an injury in fact."); *see also Democratic Nat'l Comm. v. Bostelmann*, 488 F. Supp. 3d 776, 797 (W.D. Wis. 2020).

Because of Defendants' acts and omissions, DRSC has "need[ed] to expend more resources than usual to assist their members in a specific fashion that is core to their mission." *Nat'l Fed'n of the Blind v. United States Dep't of Educ.*, 407 F. Supp. 3d 524, 533 (D. Md. 2019) (holding that a disability P&A group had organizational standing). DRSC has organizational standing.

### C.    SC NAACP

The South Carolina State Conference of NAACP ("SC NAACP") has standing from similar organizational injuries. Its mission has been perceptibly impaired and its limited resources diverted to address Defendants' unlawful treatment of detained children, a disproportionate number of whom are Black. JA72-73, JA132.

## IV.    Plaintiffs have statutory standing under Section 1983.

Defendants argue that precedent forecloses Plaintiffs' Section 1983 claims. Far from it. As Plaintiffs describe in their opening brief, this Court has previously called Defendants' exact arguments "meritless." *Planned Parenthood South Atl. v. Wilson*, 26 F.4th 600, 608 n.* (4th Cir. 2022), *vacated on other grounds*, No. 21-1369, 2022 WL 2900658 (4th Cir. July 21, 2022). Br. at 47-48. The cases Defendants cite are not to the contrary. Resp. at 37-41. Unlike Plaintiffs here, the plaintiffs in *Howerton* and *Owens* were not injured *at all* by the constitutional violations for which they sought remedies. *Inmates v. Owens*, 561 F.2d at 562 (case dismissed because inmates did not personally experience the harms they sought to remedy); *Howerton v. Fletcher*, 213 F.3d 171, 172 (4th Cir. 2000) (plaintiff could not recover damages for conduct that caused no injury to her). By contrast, Plaintiff organizations' missions are impaired, and their resources are diverted. *Supra* Part III.

Defendants' arguments about the text of Section 1983 also fail. They insist that the phrase "the party injured" in the Section 1983 must refer only to the party suffering the constitutional violation. Resp. at 40-41. But, as Plaintiffs have explained, that invents a new limit on relief under Section 1983 that is not supported by the text. Resp. at 48-53. Nowhere does Section 1983 say that "the party injured" must also be the party who suffers the constitutional injury. As the entire doctrine of

26

organizational standing has long embraced, organizations can seek redress from injuries caused by violations of others' rights. Defendants' strict approach to the text of Section 1983 conflicts with the mandate that the statute be interpreted broadly, Resp. 50-51, and flies in the face of Supreme Court cases interpreting similar statutory language as allowing plaintiffs to bring claims on behalf of others so long as Article III's requirements are satisfied, Resp. at 49.

## V.    Plaintiffs' statutory claims were wrongly dismissed.

Plaintiffs each assert claims under the ADA, RA, and IDEA ("statutory claims"). JA137-141. DRSC asserted each claim on behalf of its harmed constituents under *Hunt*, and every Plaintiff also asserted each claim on their own behalf under *Havens*. The parties agree that DRSC's associational claims were dismissed on mootness grounds, but dispute how the district court resolved Plaintiffs' *organizational* claims under the ADA, RA, and IDEA.

### A.    Plaintiffs' organizational claims under the ADA, RA, and IDEA were mistakenly dismissed for lack of statutory standing.

On appeal, Defendants agree that "the district court expressly adopted the R&R on Appellants' statutory organizational standing claims," and that the 3rd R&R did not recommend dismissing Plaintiffs' organizational claims under the ADA, RA, or IDEA for lack of statutory standing. Resp. at 48-49. The problem (that Defendants ignore) is that

27

the district court's conclusion that Plaintiffs failed to object to the dismissal of their organizational claims refers *exclusively* to Plaintiffs' arguments about *statutory standing*. *See* JA400 n.15 (citing JA290-299 (discussing statutory standing)).

Seeking to profit from the confusion, Defendants try to ride two horses. After maintaining that "the district court's ruling on the organizational statutory disability claims *was not tied to prudential standing*," Resp. at 48, Defendants turn around and argue that the dismissal was based on Plaintiffs' failure "to plausibly allege that *their own* ...statutory rights were violated." Resp. at 49 (emphasis added). But whether a statute requires a plaintiff to assert a violation of their own statutory rights—as opposed to merely an injury-in-fact—is the quintessential statutory standing question. Moreover, it is a question answered decidedly in Plaintiffs' favor. *See A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356, 362-64 (4th Cir. 2008) (following the "unanimous view of our sister circuits" and holding that methadone clinic can bring organizational claims under the ADA and RA).

As explained in Plaintiffs' opening brief, the district court's order incorrectly construed the 3rd R&R as recommending dismissal of *all* of Plaintiffs' organizational claims for lack of statutory standing. Resp. at 47-51. Because the district court mistakenly dismissed some of Plaintiffs' claims for unraised reasons, this Court should reverse.

28

B.     Plaintiffs objected to the dismissal of their associational and organizational claims under the ADA, RA, and IDEA.

Defendants also misrepresent the record by averring that "Appellants objected only to the recommended dismissal of their *associational* claims." Resp. at 48. Plaintiffs' filings prove otherwise.

At the highest level, Plaintiffs asked the district court to "deny Defendants' Third Motion to Dismiss *in its entirety*." JA311 (Conclusion) (emphasis added). Zooming in slightly, the objections argue that "*Plaintiffs* state plausible claims for relief under the ADA, Rehabilitation Act, and IDEA." JA299. By contrast, Plaintiffs' objections refer exclusively to *DRSC* when discussing their associational claims. *See* JA345 ("The Magistrate Judge correctly recommends that *Plaintiff DRSC* has associational standing" (emphasis added)). Finally, and most conclusively, Plaintiffs responded to each deficiency raised in the 3rd R&R with facts unique to Justice 360, which asserts no associational claims. *See* JA302 (as evidence of qualifying disability, pointing to "a Justice 360 client with an intellectual disability"); JA306 (as evidence of causation, discussing how Defendants' use of isolation disparately impacts a Justice 360 client); JA309 (pointing to Justice 360 clients—Child 1 and Child 3—as evidence of Defendants' failure to comply with their child-find duties under the IDEA). Together, these afforded plenty of notice that the Plaintiffs objected to the dismissal of both their

29

associational *and* organizational claims under the ADA, RA, and IDEA.

Thus, the district court was wrong to treat these objections as waived.

## CONCLUSION

Based on the foregoing, the Court should reverse.

Dated: April 24, 2025

Respectfully submitted,

*Allen Chaney*
Allen Chaney
ACLU of South Carolina
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org

Janette Louard
Anthony Ashton
Quiana-Joy Ochiagha
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215
qochiagha@naacpnet.org

Jacob D. Alderdice
Jeremy Creelan
Amit Patel
JENNER & BLOCK
LLP
1155 Avenue of the
Americas
New York, NY 10036
jalderdice@jenner.com
jcreelan@jenner.com
apatel@jenner.com

William R. Weaver
Mary E. Marshall
JENNER & BLOCK
LLP
1099 New York Ave.
NW Suite 900
Washington DC 20001
jcreelan@jenner.com
wweaver@jenner.com
mmarshall@jenner.com

Rita Bolt Barker
WYCHE, PA
200 E. Broad
Street Suite 400
Greenville, SC
29601
rbarker@wyche.com

30

*Counsel for Plaintiffs-Appellants*

31