No. 25-1032

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

SOUTH CAROLINA STATE CONFERENCE OF NAACP;
DISABILITY RIGHTS SOUTH CAROLINA; JUSTICE 360;

*Plaintiffs-Appellants*,

v.

SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE;
EDEN HENDRICK, in her official capacity as Executive Director of the
South Carolina Department of Juvenile Justice,

*Defendants-Appellees*.

On Appeal from the United States District Court
District of South Carolina (Rock Hill)
No. 0:22-cv-01338-JDA-PJG
Hon. Jacquelyn D. Austin

## PETITION FOR REHEARING EN BANC

Allen Chaney
ACLU OF SOUTH
CAROLINA
P.O. Box 1668
Columbia, SC 29202
(864) 372-6681
achaney@aclusc.org

Jacob D. Alderdice
Jeremy M. Creelan
Amit Patel
JENNER & BLOCK LLP
1155 Avenue of the
Americas
New York, NY 10036
(212) 891-1600
jalderdice@jenner.com

Rita Bolt Barker
WYCHE, PA
200 East Broad Street
Suite 400
Greenville, SC 29601
(864) 242-8200
rbarker@wyche.com

*Additional Counsel Listed on Following Page*

Janette Louard
Anthony Ashton
Quiana-Joy Ochiagha
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215
(410) 580-5777
qochiagha@naacpnet.org

William R. Weaver
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Avenue
NW Suite 900
Washington DC 20001
(202) 639-6000
wweaver@jenner.com
mmarshall@jenner.com

*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................ii

INTRODUCTION............................................................................................1

BACKGROUND .............................................................................................2

    I.    Congressional Authorization of P&As........................................2

    II.    DRSC's Allegations Below ..........................................................3

    III.    The District Court Decision .........................................................4

    IV.    The Panel Decision......................................................................5

LEGAL STANDARD .......................................................................................6

REASONS FOR GRANTING THE PETITION .......................................................8

    I.    Whether P&As have standing is an issue of exceptional importance ....................................................................................8

        A.    The Panel decision invalidates federal law. ..............................9

        B.    The Panel decision abolishes important rights-protective litigation throughout the Circuit. ...................................................10

    II.    The Panel majority misapplied *Hunt* and arrogated Congressional authority....................................................................11

        A.    DRSC has sufficient "indicia of membership" to assert associational standing under *Hunt*. ....................................................11

        B.    Congress validly conferred standing on DRSC. ....................14

    III.    The Panel decision conflicts with authoritative decisions of other circuits.15

CONCLUSION..............................................................................................17

CERTIFICATE OF COMPLIANCE ....................................................................18

i

### TABLE OF AUTHORITIES

**Cases**

*Advocacy Center for Elderly & Disabled v. Louisiana Department of Health & Hospitals*, 731 F. Supp. 2d 583 (E.D. La. 2010) ................................16

*Advocacy Center v. Louisiana Tech University*, 2019 WL 1303212 (W.D. La. Mar. 6, 2019) ................................................................................16

*A.H. ex rel. E.H. v. New York State Department of Health*, 147 F.4th 270 (2d Cir. 2025).........................................................................................15, 16

*Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241 (5th Cir. 1994) ("*ARC*")..........................................................................2

*County of Maricopa v. Lopez-Valenzuela*, 575 U.S. 1044 (2015).............................9

*Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025) ............................6

*Disability Rights North Carolina v. North Carolina State Board of Elections*, 602 F. Supp. 3d 872 (E.D.N.C. 2022) .................................................10

*Disability Rights South Carolina v. Richland County*, 2025 WL 2702055 (D.S.C. Sept. 23, 2025)........................................................................11

*Disability Rights Wisconsin, Inc. v. Walworth County Board of Supervisors*, 522 F.3d 796 (7th Cir. 2008) .........................................................16

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999).........................................1, 12, 13, 14

*In re Financial Oversight & Management Board for Puerto Rico*, 110 F.4th 295 (1st Cir. 2024).........................................................................................12

*Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826 (5th Cir. 1997) ......................................................................................................11

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)....................................................... 1, 8, 11, 12, 13, 14, 15

*Indiana Protection & Advocacy Services Commission v. Commissioner, Indiana Department of Correction*, 642 F. Supp. 2d 872 (S.D. Ind. 2009) ...................................................................................16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................6

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ...............................................6

*Missouri Protection & Advocacy Services, Inc. v. Carnahan*, 499 F.3d
    803 (8th Cir. 2007) ("*MOPAS*") ........................................................2, 16

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989)....................................................................................6

*Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ...1, 11, 12, 13, 14

*Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S.
    269 (2008)....................................................................................................7

*Timothy B. v. Kinsley*, 2024 WL 1350071 (M.D.N.C. Mar. 29, 2024) .........2, 10, 11

*United Food & Commercial Workers Union Local 751 v. Brown
    Group, Inc.*, 517 U.S. 544 (1996) ("*UFCW*") .........................1, 7, 11, 12, 14, 15

*United States v. Morrison*, 529 U.S. 598 (2000) ...................................9, 10

*United States v. Watson*, 423 U.S. 411 (1976) .......................................14

*Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247
    (2011)..................................................................................................... 9-10

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)..............................................................................7, 15

*West Virginia Advocates, Inc. v. Board of Education of Monongalia
    County*, 2005 WL 2076620 (N.D.W.Va. Aug. 19, 2005)...................10

*Warth v. Seldin*, 422 U.S. 490 (1975) .........................................................6

**Statutes**

29 U.S.C. § 794 .............................................................................................3

42 U.S.C. § 1997 ...........................................................................................9

42 U.S.C. § 6000 *et seq.*...............................................................................2

42 U.S.C. § 10801 ......................................................................................3, 8

iii

42 U.S.C. § 10805 ..............................................................................1, 3, 8, 9, 12, 13

42 U.S.C. § 10807 ...................................................................................................3

42 U.S.C. § 15043 .............................................................................................12, 13

42 U.S.C. § 15044 ...................................................................................................9

S.C. Code § 43-33-330 ...........................................................................................13

Developmentally Disabled Assistance and Bill of Rights Act, Pub. L.
    No. 94-103, 89 Stat. 486 (1975) .......................................................................2, 9

**Legislative Materials**

*Care of Institutionalized Mentally Disabled Persons: Joint Hearings
    on S. 99-50 Before the Subcomm. on the Handicapped of the S.
    Comm. on Lab. and Hum. Res. and the Subcomm. on Lab. Health,
    and Hum. Servs., Educ., and Related Agencies of the S. Comm. on
    Appropriations*, 99th Cong., Pt. 2 Appendix (1985) (Staff Report
    on the Institutionalized Mentally Disabled Requested by Senator
    Lowell P. Weicker, Jr.). ........................................................................................3

S. Rep. No. 94-160 (1975) .......................................................................................9

S. Rep. No. 103-120 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 164 ....................10

**Other Authorities**

34 C.F.R. § 381 .......................................................................................................9

42 C.F.R. § 51.6 ...................................................................................................2, 8

42 C.F.R. § 51.22 ....................................................................................................2

Fed. R. App. P. 40 ...................................................................................................9

Fed. R. Civ. P. 17 .................................................................................................7, 14

Kelsey McCowan Heilman, Comment, *The Rights of Others:
    Protection and Advocacy Organizations' Associational Standing to
    Sue*, 157 U. Pa. L. Rev. 237 (2008) .....................................................................15

## INTRODUCTION

For three reasons, Plaintiffs request en banc review of the Panel's fractured decision that Protection and Advocacy ("P&A") organizations lack standing to litigate on behalf of their statutory constituents.

*First*, the issue is exceptionally important. After decades of representational litigation by P&As in this Circuit, the Panel majority suddenly and erroneously slammed the courthouse doors on organizations "Congress created ... to protect a vulnerable population." Op. 27 (Wynn, J., dissenting). Despite the strong presumption of constitutionality owed to acts of Congress, the majority accorded no weight to Plaintiff Disability Rights South Carolina's ("DRSC") statutory authorization to sue on its constituents' behalf. *See* 42 U.S.C. § 10805(a)(1)(B).

*Second*, the Panel majority misapplied *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) and other bedrock standing principles. *Hunt* warns not to "exalt form over substance," *id.* at 345, yet that is precisely what the Panel majority did by treating *Hunt*'s "indicia of membership" test like "a rigid constitutional checklist," Op. 23 (Wynn, J., dissenting), and by ignoring Congress's authority to create, "by statute," a relationship "sufficient to rebut the background presumption" against "assert[ing] the rights of absent third parties." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552, 557 (1996) ("*UFCW*").

*Third*, the Panel's decision conflicts with authoritative decisions of the Ninth and Eleventh Circuits, *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1110-11 (9th Cir. 2003) and *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999), and reverses

1

the unanimous practice of district courts in this Circuit, *see, e.g.*, *Timothy B. v. Kinsley*, 2024 WL 1350071, at \*11 (M.D.N.C. Mar. 29, 2024) (collecting cases). Most courts agree that P&As have sufficient "indicia of membership" to satisfy *Hunt*. By holding otherwise, the Panel majority breaks sharply from that consensus and aligns this Circuit with the cursory and inapposite analyses of the Fifth and Eighth Circuits in *Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("*ARC*") and *Missouri Protection & Advocacy Services, Inc. v. Carnahan*, 499 F.3d 803, 809-10 (8th Cir. 2007) ("*MOPAS*").

## BACKGROUND

### I.    Congressional Authorization of P&As

The Developmentally Disabled Assistance and Bill of Rights Act, Pub. L. No. 94-103, 89 Stat. 486 (1975) ("DD Act"), 42 U.S.C. §§ 6000 *et seq.*, established protection and advocacy systems for people with mental disabilities. P&As are governed by a Board of Directors that must include "significant representation of individuals with mental illness," 42 C.F.R. § 51.22(b)(2), guided by advisory councils comprised primarily "of individuals who have received or are receiving mental health services or who are family members of such individuals," *id.* § 51.23(b)(1).

A decade later, Congress enacted the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") based on its determination that: (1) individuals with mental illness were uniquely vulnerable to abuse and serious

injury, and (2) state-level systems for monitoring compliance with those individuals' rights were inadequate. 42 U.S.C. § 10801. PAIMI arose from extensive Congressional investigations and hundreds of interviews showing that mental-health patients faced severe abuse and injury amidst lax state regulatory enforcement.[1]

PAIMI empowers P&As to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness," *id*. § 10805(a)(1)(B), and with the "enforcement of the Constitution and Federal and State statutes," *id.* § 10801(b)(2)(A). That includes the authority to sue in federal or state courts on their constituents' behalf. *Id.* § 10807(a); *see also id.* § 10805(a)(1)(C).

There are now 57 separate P&As. Congress has continually funded and expanded the P&A system over the last three decades.[2]

## II.    DRSC's Allegations Below

In 2022, DRSC—South Carolina's P&A—sued on behalf of its constituents held in the South Carolina Department of Juvenile Justice ("DJJ"). JA1. By DJJ's own admission, "the majority" of children in its custody have mental illness. JA130.

---

[1] *Care of Institutionalized Mentally Disabled Persons: Joint Hearings on S. 99-50 Before the Subcomm. on the Handicapped of the S. Comm. on Lab. and Hum. Res. and the Subcomm. on Lab. Health, and Hum. Servs., Educ., and Related Agencies of the S. Comm. on Appropriations*, 99th Cong., Pt. 2 Appendix  (1985) (Staff Report on the Institutionalized Mentally Disabled requested by Senator Lowell P. Weicker, Jr.).

[2] *See, e.g.*, 29 U.S.C. § 794.

DRSC alleged that DJJ operates dangerous, overcrowded, and understaffed facilities where violence is pervasive and worsening, solitary confinement of children is commonplace, and educational and rehabilitative services are largely nonexistent. JA84-118. DRSC alleged that these systemic conditions cause severe harm to *all* of its constituents in DJJ custody, JA115-118, and recited the illustrative harms of thirteen pseudonymous constituents. JA119-129. DRSC and two other organizational plaintiffs also alleged that unlawful conditions at DJJ drained their resources and impaired their abilities to carry out their missions. JA118-125.

## III.    The District Court Decision

On December 18, 2024, the district court dismissed all of Plaintiffs' claims. JA375-403.

It ruled that Plaintiffs established Article III standing to assert both their organizational and representational claims, agreeing both that Justice 360 suffered diversion of resources and frustration of purpose and that DRSC alleged sufficient "indicia of membership" to assert its constituents' injuries under *Hunt*. JA388-394. But because the constituents identified in the Complaint were released during the 447 days between the filing of the First Amended Complaint and the court's decision, it dismissed those claims as moot. JA403.

Finally, the court ruled that Plaintiffs' direct organizational injuries were noncognizable under 42 U.S.C. § 1983. JA400-403.

4

## IV.    The Panel Decision

The Panel majority affirmed the dismissal of Plaintiffs' claims, but by deciding that DRSC lacked Article III standing to sue on its constituents' behalf. *See* Op. 3.

Specifically, the majority rejected the district court's conclusion that DRSC had "sufficient indicia of membership" to satisfy *Hunt*. Op. 10. The majority acknowledged that courts have "disagreed" and that Congress "likely intended" to give P&As authority to sue, *id*. at 9-10, but held that because DRSC's constituents "have not chosen to join the organization" and do not fund DRSC's operations, and because DRSC's leadership is not *entirely* comprised of constituents, DRSC cannot sue in a representative capacity. *Id.* at 10-11.

The majority also rejected Plaintiffs' organizational standing, ruling that Plaintiffs' resource diversions were voluntary and that their injuries were too attenuated from DJJ's conduct. *Id.* at 11-16. Finally, the majority agreed with the district court's conclusion that Plaintiffs lacked statutory standing to assert Section 1983 claims. *Id.* at 16-19; *but see id.* at 21 n.2 (Wynn, J., dissenting) (explaining that the majority's Section 1983 analysis was "dicta").

Judge Wynn dissented. In his view, DRSC comfortably satisfied *Hunt*'s required indicia of membership for associational standing. *Id.* at 20-27. He observed that "[n]othing in *Hunt* suggests that its discussion of governance structure, financing, or selection of leadership was intended to establish a rigid constitutional checklist." *Id.* at 23. In Judge Wynn's view, the majority's conclusion that DRSC's constituents "lack any meaningful say over its operations"

5

is irreconcilable with "the statutory and regulatory requirements mandating constituent representation" in DRSC's governance and contradicted DRSC's allegations at the pleading stage. Op. 25; *see id.* at 26 ("DRSC is a federally authorized and highly regulated organization with a statutory obligation to protect the rights of its mentally ill constituents who play a meaningful role in guiding its policies and operations."). And the majority's determination that DRSC lacked standing due to factors such as its constituents' lack of funding, despite its express Congressional authorization to sue, "elevate[d] an unstated requirement over the text Congress chose." Op. 26.

## LEGAL STANDARD

Article III requires both "a personal stake in the outcome of the controversy," *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citation omitted), and "three elements: injury in fact, causation, and redressability," *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (internal quotation marks omitted). But beyond those "irreducible constitutional minimums," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), it is "Congress, and not the Judiciary, [that] defines the scope of federal jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989). Prudential limits on standing—like the presumption against asserting "the legal rights or interests of third parties,"—must be "subject to exceptions, the most prominent of which is that Congress may remove [them] by statute." *Warth v. Seldin*, 422 U.S. 490, 499, 509 (1975).

6

*Representational standing* refers to claims brought by an uninjured party *on behalf of* an injured party. Such claims are not rare. "[F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) (listing examples). Representational claims are permissible when the "particular relationship[]" between the representative and the injured party is "sufficient to rebut the background presumption" against "assert[ing] the rights of absent third parties." *UFCW*, 517 U.S. at 557. Such relationships can be "recognized either by common-law tradition *or by statute*." *Id.* (emphasis added); *see* Fed. R. Civ. P. 17 (authorizing representative claims by, *inter alia*, parties "authorized by statute"); *e.g.*, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769, 773-74 (2000) (discussing relator claims authorized by the False Claims Act).

*Associational standing* is "one strand" of representational standing that allows an organization to "sue to redress its members' injuries, even without a showing of injury to the association itself." *UFCW*, 517 U.S. at 552, 557. The doctrine acknowledges that the relationship between an organization and its members is sufficient to "assur[e] adversarial vigor in pursuing [its member's] claim" and thus overcome the presumption against representational litigation, *id.* at 552-53, 555-56 (discussing doctrinal history).

In *Hunt*, the Supreme Court expanded associational standing beyond traditional membership organizations to also include entities that "[i]n a very real

7

sense, ... represent[] [their constituents] ... and provide[] the means by which they express their collective views and protect their collective interests." 432 U.S. at 344-45. When an organization can show "indicia of membership"—*e.g.*, that it "serves" the interests of a "specialized segment" of the community, that those individuals are "the primary beneficiary of its activities, including the prosecution of [representational] litigation," and a "financial nexus between the interests of the [organization] and its constituents"—then it is a membership organization "for all practical purposes" and can invoke associational standing. *Id*. To hold otherwise would "exalt form over substance." *Id.* at 345.

**REASONS FOR GRANTING THE PETITION**

**I.    Whether P&As have standing is an issue of exceptional importance.**

In response to the grave conditions endured by children with mental illness in DJJ custody, *see generally* JA84-118, DRSC did what it was created by Congress to do—it filed federal litigation to "pursue ... legal ... remedies to ensure the protection of individuals with mental illness." *See* 42 U.S.C. §§ 10801, 10805; 42 C.F.R. § 51.6(f). In dismissing DRSC's representational claims, the Panel majority ruled that Congress's statutory conferral of standing was unconstitutional. *See* Op. 10-11. Because any decision to strike an act of Congress is exceptionally important, and because doing so here abolishes a critical tool for protecting vulnerable individuals throughout the Circuit, the Court should grant en banc review.

8

### A.      The Panel decision invalidates federal law.

Striking down a federal statutory provision is an act of "exceptional importance." Fed. R. App. P. 40(b)(2)(D). To overcome the "[d]ue respect" owed to Congress as "a coordinate branch of Government," a court must find "a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000). It is so consequential that "Congress historically required [the Supreme] Court to review any decision of a federal court of appeals holding that a state statute violated the Federal Constitution." *Cnty. of Maricopa v. Lopez-Valenzuela*, 575 U.S. 1044 (2015) (Thomas, J., dissenting from denial of certiorari) (citing 28 U.S.C. § 1254(2) (1982 ed.)). Here, the legislative history reveals the gravity of the Panel's decision.

Fifty years ago, responding to conditions much like those challenged by DRSC, Congress decided that "the Federal government can and should play a significant role in upgrading the care and services provided to developmentally disabled persons." S. Rep. No. 94-160, at 3-4 (1975). Every branch of government was assigned a role. For itself, Congress took charge of creating and funding P&As. *See, e.g.*, 89 Stat. 486 (DD Act); 42 U.S.C. §§ 10801 *et seq.* (PAIMI). The executive branch was assigned with, *inter alia*, auditing P&As, *see* 34 C.F.R. § 381, and with investigating and litigating claims arising in custodial settings, *see* 42 U.S.C. § 1997. Finally, with respect to the judiciary, Congress authorized federal jurisdiction for suits brought by P&As on their own behalf and on behalf of their constituents. *See* 42 U.S.C. §§ 10805(a)(1)(B), 15044(b); *cf. Va. Off. for Prot.*

9

*& Advoc. v. Stewart*, 563 U.S. 247 (2011) (holding that Virginia P&A was authorized to sue state officials to produce medical records).

In 1993, Congress met again to consider revising the P&A statutes. Based on "the waste of scarce resources that are expended on litigating the issue of whether P&A systems have standing to bring suit," S. Rep. No. 103-120, at 39 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 164, 202, the committee considered clarifying the law. Instead, it "decided that no statutory fix is necessary because the current statute is clear that P&A systems have standing." *Id.*

Decades later, the Panel majority now rules that Congress's conferral of representational standing was unconstitutional. Given the "[d]ue respect" owed to Congress's decision to confer representational standing on P&As, *Morrison*, 529 U.S. at 607, the Court should grant en banc review.

### B. The Panel decision abolishes important rights-protective litigation throughout the Circuit.

Without exception, district courts throughout the Fourth Circuit have long permitted P&A organizations to bring representational lawsuits on behalf of their constituents. *See, e.g.*, *Timothy B.*, 2024 WL 1350071 11 (collecting cases); *W. Va. Advocs., Inc. v. Bd. of Educ. of Monongalia Cnty.*, 2005 WL 2076620, at *2 (N.D. W.Va. Aug. 19, 2005). As intended by Congress, P&As in this Circuit have fought (and are fighting) to ensure that voters with disabilities can obtain needed assistance, *see, e.g.*, *Disability Rights North Carolina v. North Carolina State. Board of Elections*, 602 F. Supp. 3d 872 (E.D.N.C. 2022), that children with disabilities aren't isolated by child welfare systems, *Timothy B.*, 2024 WL

1350071, and that jail conditions meet the constitutional minima, *Disability Rights South Carolina v. Richland County*, 2025 WL 2702055 (D.S.C. Sept. 23, 2025).

Because the Panel decision abolishes that important ongoing work, en banc review is warranted.

## II.    The Panel majority misapplied *Hunt* and arrogated Congressional authority.

Under Supreme Court precedent, DRSC's relationship to its constituents is "sufficient to rebut the background presumption" against "assert[ing] the rights of absent third parties." *UFCW*, 517 U.S. at 557. That is shown both by its "indicia of membership," *Hunt*, 432 U.S. at 344, and "by statute," *UFCW*, 517 U.S. at 557. In holding otherwise, the Panel majority erroneously applied *Hunt* like "a rigid constitutional checklist," Op. 23 (Wynn, J., dissenting), and ignored DRSC's Congressional authorization to bring representational litigation. *E.g.*, Op. 9 (focusing on whether DRSC's constituents "fund[]" its activities and stressing that P&A systems "do not have *all* the indicia of membership [from *Hunt*]" (emphasis added) (citation omitted)).

### A.    DRSC has sufficient "indicia of membership" to assert associational standing under *Hunt.*

*Hunt*'s "indicia of membership" test requires a "functional analysis." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828 (5th Cir. 1997) (citation omitted). Its only goal is to determine whether "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy." *Mink*, 322

11

F.3d at 1111 (citation omitted); *accord UFCW*, 517 U.S. at 557. Although *Hunt* focused on three indicia of membership, *see Hunt*, 432 U.S. at 344-45, those "are illustrative, not exhaustive." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 110 F.4th 295, 310 (1st Cir. 2024) (collecting cases).

DRSC exhibits the following indicia of membership:

1.    DRSC serves "a specialized segment" of the community, which is benefited by the "prosecution of this kind of litigation." *Hunt*, 432 U.S. at 344. By statute, DRSC is singularly dedicated to individuals with mental illness in South Carolina, like a traditional membership organization. *See Stincer*, 175 F.3d at 886; *Mink*, 322 F.3d at 1111.

2.    DRSC is strongly influenced by its constituents. Federal law requires that DRSC be led by "an advisory council" that is "at least 60[%] ... comprised of individuals who have received or are receiving mental health services or who are family members of such individuals," and "chaired by" one such individual. 42 U.S.C. § 10805(a)(6). It must also provide its constituents with regular opportunities to comment on its "goals and priorities" and its "rationale for ... such goals." *Id.* §§ 15043(a)(2)(D), 10805(a)(8). Conversely, DRSC must maintain independence from state or federal agencies that serve its constituents. *Id.* §§ 15043(a)(2)(G), 10805(a)(2).

DRSC's governing board also includes "significant [constituent] representation," JA393, and is thus responsive to constituent influence. In fact, more than half of DRSC's board is appointed in "consult[ation] with advocacy

groups of the State representing persons with disabilities," and three board members must be constituents or family members of constituents. *See* S.C. Code § 43-33-330.[3]

Collectively, these statutory mandates satisfy *Hunt* by ensuring that "the constituents of [DRSC] possess the means to influence the priorities and activities [it] undertakes." *Stincer*, 175 F.3d at 886; *see also Mink*, 322 F.3d at 1111-12.

**3.** DRSC is accountable to its constituents. For example, DRSC must "establish a grievance procedure" for constituents. 42 U.S.C. §§ 15043(a)(2)(E), 10805(a)(9). It must "hire and maintain sufficient numbers and types of staff" to serve its constituents. *Id.* § 15043(a)(2)(K). And if DRSC fails to adequately support its constituents, it can lose its P&A designation (and funding). *Id.* § 15043(a)(4).

**4.** DRSC has a mutual interest in this litigation. DRSC is statutorily required to monitor conditions at DJJ on behalf of its constituents there. But it struggles to do so because, *e.g.*, its constituents get violently attacked after meeting with DRSC monitors. JA126-127. Thus, like the state agency in *Hunt*, DRSC is acting to promote the mutual interests of both DRSC and its constituents. *Hunt*, 432 U.S. at 345 (noting that "the interests of the Commission itself may be adversely affected by the outcome of this litigation.").

**5.** Finally, the Panel majority was wrong—mandatory membership does *not* disqualify DRSC as a membership organization. *Compare* Op. 10

---

[3] The Panel majority's conclusion that "[i]ndividuals with mental illness play no role in selecting the members of DRSC's governing board," Op. 9, was wrong.

13

("[I]ndividuals with mental illness need not even be aware of DRSC's existence to be counted among its constituents."), *with Hunt*, 432 U.S. at 345 ("Nor do we find it significant ... that 'membership' is 'compelled.'" (noting that membership in trade unions and bar associations are often mandatory)).

As Judge Wynn correctly concluded, Op. 24-25, these indicia of membership establish that DRSC is a membership organization "for all practical purposes" and has "standing to litigate the claims of its constituents." 432 U.S. at 345-46; *accord Stincer*, 175 F.3d at 886; *Mink*, 322 F.3d at 1112.

### B.    *Congress validly conferred standing on DRSC.*

Even apart from *Hunt*, DRSC has standing to assert the claims of its constituents. Although it cannot displace injury-in-fact, traceability, or redressability, Congress can generally confer representational standing by statute. *UFCW*, 517 U.S. at 557; *see also* Fed. R. Civ. P. 17(a). Congress plainly tried to do that for P&As like DRSC, *see* Op. 10-11, 26, but the majority gave that no weight. Yes, "Congress cannot displace constitutional limitations on the jurisdiction of federal courts via statute," Op. 11, but neither can courts simply brush aside acts of Congress. *See United States v. Watson*, 423 U.S. 411, 416 (1976) ("[T]here is a strong presumption of constitutionality due to an Act of Congress." (citation omitted)).

DRSC is a membership organization "for all practical purposes," *Hunt*, 432 U.S. at 344, *see supra*; but Article III doesn't require it to be. Because DRSC's relationship to its constituents is "recognized ... *by statute*," *UFCW*, 517 U.S. at

14

557 (emphasis added), it need only establish the constitutional minimum: a "personal stake" and "concrete private interest" in vindicating harms to its constituents. *Cf. Vt. Agency of Nat. Res.*, 529 U.S. at 772-74; *Hunt*, 432 U.S. at 341. Because "P&As are statutorily constructed to be responsive to the population[s] that they are charged with serving[,]" Kelsey McCowan Heilman, Comment, *The Rights of Others: Protection and Advocacy Organizations' Associational Standing to Sue*, 157 U. Pa. L. Rev. 237, 264 (2008), they comfortably satisfy the "personal stake" requirement of Article III. *See A.H. ex rel. E.H.*, 147 F.4th 270, 298 (2d Cir. 2025) (Pérez, J., concurring and dissenting in part), *pet'n for cert. filed*, 94 U.S.L.W. 3230 (U.S. Jan. 15, 2026) (No. 25-843). The Panel majority may deride Congress's P&A system as "paternalistic," but that is a policy question—not an Article III issue.

Because they are subjected to unconstitutional conditions, DRSC's constituents at DJJ have standing to sue in their own right. DRSC can litigate those claims because Congress designed DRSC to have a "personal stake" in its constituents' rights such that the presumption against representational litigation is rebutted. No more is required by Article III.

### III.   The Panel decision conflicts with authoritative decisions of other circuits.

Finally, the Panel decision puts the Fourth Circuit on the wrong side of a circuit split. The majority "recognize[d] that this is an issue on which courts have disagreed," Op. 9, but the split is rather lopsided. The circuits whose decisions the panel disclaimed—the Ninth and Eleventh—align better with Supreme Court

precedent, are more respectful of Congressional intent, and represent the overwhelming consensus in federal courts across the country. *Supra* Part II.A (applying *Hunt*); *see also, e.g.*, *Ind. Prot. & Advoc. Servs. Comm'n v. Comm'r, Ind. Dep't of Corr.*, 642 F. Supp. 2d 872, 877 (S.D. Ind. 2009) ("[C]ourts around the country have rejected similar standing challenges to protection and advocacy services."); *supra* Part I.B (discussing unanimity in this Circuit).

By contrast, the circuits whose decisions the Panel joined—the Fifth and Eighth—contain only cursory or inapposite analyses. In *ARC*, the Fifth Circuit "did not address a PAIMI organization." *Advoc. Ctr. v. La. Tech. Univ.*, 2019 WL 1303212, *7 (W.D. La. Mar. 6, 2019). Thus, *ARC* is not even controlling *in that Circuit*. *See, e.g.*, *id.*; *Advoc. Ctr. for Elderly & Disabled v. La. Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 595-96 (E.D. La. 2010) (distinguishing *ARC* and following *Mink* and *Spincer*). *MOPAS*, the Eighth Circuit case, does little more than parrot *ARC*'s holding. *MOPAS*, 499 F.3d at 809-10. Understandably, those decisions have (until this case) been squarely rejected by courts throughout the country.

Two other circuits have weighed in less definitively. The Seventh Circuit assumed without deciding that P&As have associational standing. *Disability Rts. Wis, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 803-04 (7th Cir. 2008). And the Second Circuit recently held, in a split opinion, that P&As lack "congressionally authorized representational standing." *A.H. ex rel. E.H.*, 147 F.4th at 277-78 & n.2 (refusing to apply *Hunt*).

16

## CONCLUSION

The Court should grant Plaintiffs' Petition for Rehearing En Banc.

**Dated: February 12, 2026**

Respectfully Submitted,

*/s/ Allen Chaney*

| | | |
|---|---|---|
| Allen Chaney<br>ACLU OF SOUTH CAROLINA<br>P.O. Box 1668<br>Columbia, SC 29202<br>(864) 372-6681<br>achaney@aclusc.org | Jacob D. Alderdice<br>Jeremy M. Creelan<br>Amit Patel<br>JENNER & BLOCK LLP<br>1155 Avenue of the Americas<br>New York, NY 10036<br>(212) 891-1600<br>jalderdice@jenner.com<br>jcreelan@jenner.com<br>apatel@jenner.com | Rita Bolt Barker<br>WYCHE, PA<br>200 E. Broad Street<br>Suite 400<br>Greenville, SC 29601<br>(864) 242-8200<br>rbarker@wyche.com |
| Janette Louard<br>Anthony Ashton<br>Quiana-Joy Ochiagha<br>NAACP<br>4805 Mt. Hope Drive<br>Baltimore, MD 21215<br>(410) 580-5777<br>qochiagha@naacpnet.org | William R. Weaver<br>Mary E. Marshall<br>JENNER & BLOCK LLP<br>1099 New York Avenue<br>NW, Suite 900<br>Washington DC 20001<br>(202) 639-6000<br>wweaver@jenner.com<br>mmarshall@jenner.com | |

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1. This Petition for Rehearing En Banc has been prepared using Microsoft Word, in Times New Roman font, with 14-point proportional type size.

2. The body of this Petition, exclusive of the case caption, title, tables, and signature block, contains no more than 3,900 words. Specifically, this Petition contains 3,900 words.

DATE: February 12, 2026

*/s Allen Chaney*

Allen Chaney
Counsel for Petitioner/Appellant