# 25-1032

In The

# United States Court of Appeals

For The Fourth Circuit

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP;
DISABILITY RIGHTS SOUTH CAROLINA; JUSTICE 360

*Plaintiffs-Appellants,*

v.

SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE;
EDEN HENDRICK, in her official capacity as Executive Director of the South
Carolina Department of Juvenile Justice

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of South
Carolina, at Rock Hill
0:22-cv-01338-JDA-PJG
Hon. Jacquelyn D. Austin

**BRIEF OF THE NATIONAL DISABILITY RIGHTS NETWORK,
DISABILITY RIGHTS MARYLAND, DISABILITY RIGHTS NORTH
CAROLINA, DISABILITY LAW CENTER OF VIRGINIA, AND
DISABILITY RIGHTS WEST VIRGINIA AS AMICI CURIAE IN
SUPPORT OF PLAINTIFFS-APPELLANTS' PETITION FOR
REHEARING EN BANC**

Theodore A. Howard
*Counsel of Record*
Kathleen C. Cooperstein
Myron Zhang

Wiley Rein LLP
2050 M St NW
Washington, DC 20036
(202) 719-7000
*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), the undersigned counsel

certifies that none of the amici curiae are subsidiaries of any other corporation and

no publicly held corporation owns ten percent or more of any amici curiae

organization's stock.

Dated: February 19, 2026              /s/ *Theodore A. Howard*

Theodore A. Howard
Wiley Rein LLP
2050 M St NW
Washington, DC 20036
(202) 719-7000
*Counsel for Amici Curiae*

i

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES............................................................................. iii

STATEMENT OF IDENTITIES AND INTERESTS OF AMICI CURIAE .............1

SUMMARY OF ARGUMENT..........................................................................3

ARGUMENT .................................................................................................3

      I.    The Human Cost of the Panel Majority's Decision is Immense. .............4

      II.   The Panel Majority's Decision Invalidates Federal Law and Misreads Supreme Court Precedent. ................................................................9

CONCLUSION ............................................................................................13

CERTIFICATE OF COMPLIANCE ...................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) ...........................................................................11

*Fuld v. Palestine Liberation Organization*,
101 F.4th 190 (2d Cir. 2024) .............................................................................10

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977).............................................................................1, 3, 11, 12

*Metropolitan St. Louis Equal Housing Opportunity Council v.*
*Lighthouse Lodge, LLC*,
No. 2:09–cv–04019–NKL, 2009 WL 1576735 (W.D. Mo. June 4,
2009) ....................................................................................................................6

*Missouri Protection and Advocacy Services v. Carnahan*,
499 F.3d 803 (8th Cir. 2007) ...........................................................................5, 6

*National Federation of the Blind of Nebraska, Inc. v. Outlook*
*Nebraska, Inc.*,
No. 8:10CV418, 2011 WL 4802643 (D. Neb. Oct. 11, 2011) ...........................6

*Oregon Advocacy Center v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ..........................................................................11

*Ward v. Hellerstedt*,
753 F.App'x 236 (5th Cir. 2018) .........................................................................8

*Ward v. Young*,
No. 1:16-CV-917-LY, 2022 WL 22920960 (W.D. Tex. Mar. 29,
2022) ....................................................................................................................8

**Statutes**

42 U.S.C. § 6000..................................................................................................10

42 U.S.C. § 6001 .................................................................................................10

42 U.S.C. § 10801................................................................................................10

iii

42 U.S.C. § 10805(a) ...............................................................................................10

42 U.S.C. § 10805(a)(1) .........................................................................................10

42 U.S.C. § 10805(a)(6) .........................................................................................12

42 U.S.C. § 10805(c)(1)(B)(ii) ..............................................................................12

42 U.S.C. § 15044(a)(1)(A) ...................................................................................12

Pub. L. No. 94-103, 89 Stat. 486 (1975) ...............................................................10

**Legislative Materials**

S. Rep. No. 103-120 (1993) ...................................................................................10

**Other Authorities**

Andrew G. Wood, *Dix, Dorothea Lynde*, American National
   Biography (2000),
   http://www.anb.org/view/10.1093/anb/9780198606697-e-1500181
   [https://perma.cc/R6XE-WFQU] .......................................................................4

Bernard E. Harcourt, *Reducing Mass Incarceration: Lessons from the
   Deinstitutionalization of Mental Hospitals in the 1960s*, 9 Ohio
   State Journal of Criminal Law 53 (2011),
   https://kb.osu.edu/server/api/core/bitstreams/f0c32811-ea99-5d8a-
   a2eb-81152c69a356/conten .................................................................................4

Chris Koyanagi, *Learning from History: Deinstitutionalization of
   People with Mental Illness As Precursor to Long-Term Care
   Reform*, Kaiser Commission on Medicaid & the Uninsured (2007),
   https://www.kff.org/wp-content/uploads/2013/01/7684.pdf ..............................4

David Gollaher, *Voice for the Mad: The Life of Dorothea Dix* (1995) ....................4

*Justice Department Finds State of Missouri Unnecessarily
   Institutionalizes Adults with Mental Health Disabilities in Skilled
   Nursing Facilities in Violation of the Americans with Disabilities
   Act and Improperly Relies on Guardianship*, U.S. Department of
   Justice (June 18, 2024),
   https://www.justice.gov/archives/opa/pr/justice-department-finds-
   state-missouri-unnecessarily-institutionalizes-adults-mental-health ..................6

Lexie Handlang, *Prison, Like Life, Is Not Designed for the Deaf*, Prison Journalism Project (Oct. 13, 2022), https://prisonjournalismproject.org/2022/10/13/how-i-learned-to-navitage-prison-deaf/ ...................................................................................9

Michele Friedner, *Deaf and Incarcerated in the U.S.*, Sapiens (June 15, 2021), https://www.sapiens.org/culture/deaf-incarcerated/...........................9

*Misunderstood and Mistreated*, Texas Criminal Justice Coalition, https://texascjc.org/misunderstood-and-mistreated/ (last visited Feb. 18, 2026) ....................................................................................6

Sabrina Canfield, *Disability Advocacy Group Claims New Louisiana Laws Violate Voting Rights Act*, Courthouse News Service (July 10, 2024), https://www.courthousenews.com/disability-advocacy-group-claims-new-louisiana-laws-violate-voting-rights-act/ ...............................6

## STATEMENT OF IDENTITIES AND INTERESTS OF AMICI CURIAE

The National Disability Rights Network (NDRN), the non-profit membership organization of the federally mandated Protection and Advocacy (P&A) and Client Assistance Program (CAP) agencies for individuals with disabilities, has an interest in the ability of its members to protect the legal rights of persons with disabilities. The P&A and CAP agencies were statutorily established by the United States Congress to protect the rights of people with disabilities and their families through legal support, advocacy, referral, and education. There are P&As and CAPs in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Territories, as well as a P&A and CAP affiliated with the Native American Consortium in the Four Corners region of the Southwest. Collectively, the P&A and CAP agencies are the largest providers of legally-based advocacy services to people with disabilities in the United States. The plaintiff-appellant Disability Rights South Carolina is a member of NDRN.

Disability Rights Maryland, Disability Rights North Carolina, Disability Law Center of Virginia, and Disability Rights of West Virginia are the federally designated P&As for their respective states and currently assert and/or have asserted associational standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) to represent and advocate for their constituents.

1

This brief was authored on behalf of the Amici by their counsel; no part of this brief was authored by a party or their counsel, nor have any parties or others contributed money towards the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

This case should be reheard *en banc* because the panel majority's January 29, 2026 decision misapplies the law to a question of exceptional importance—namely, whether advocacy groups such as Amici (and plaintiff-appellant Disability Rights South Carolina) possess standing to perform their Congressionally-mandated mission. The panel majority's adverse resolution of this question will cause the abandonment of thousands of vulnerable individuals within this Circuit who rely on organizations such as Amici for assistance and advocacy every single day. Furthermore, it will upend decades of jurisprudence and completely thwart the intentions of Congress in creating the P&A system. By applying an unduly rigid interpretation of *Hunt*, the panel majority casts aside the needs of real people in favor of a "membership" requirement that is neither mandated by the Supreme Court nor dictated by Constitutional principles of standing.

## ARGUMENT

If P&As are robbed of Article III associational standing to vindicate the rights of individuals with mental disabilities, the consequences will be immediate and severe. A decision of such exceptional importance should not be made on the basis of a two-judge majority.

3

## I.      The Human Cost of the Panel Majority's Decision is Immense.

P&A litigation shapes the wellbeing of a group of individuals who are uniquely vulnerable and face high barriers to vindicating their own rights. Unlike the apple growers in *Hunt*, individuals with mental illness do not share a common revenue-generating activity that unites them in commerce. The majority notes these differences between Petitioners' constituents and those in *Hunt* to justify denial of associational standing, Op. at 10, when in fact it is those differences which render associational standing here especially imperative. Indeed, the attributes common to Petitioners' constituents—their mental disabilities—also render their collective action inherently challenging. Our legal system is not designed for individuals living with mental illness and—in many cases—is openly hostile to them. Petitioners and Amici are bulwarks against a backslide into a time when mentally disabled persons were simply warehoused and neglected without regard to their own desires, needs, or abilities.[1]

---

[1]      *See, e.g.*, David Gollaher, *Voice for the Mad: The Life of Dorothea Dix* 127 (1995); Andrew G. Wood, *Dix, Dorothea Lynde*, Am. Nat'l Biography (2000), http://www.anb.org/view/10.1093/anb/9780198606697-e-1500181 [https://perma.cc/R6XE-WFQU]; Chris Koyanagi, *Learning from History: Deinstitutionalization of People with Mental Illness As Precursor to Long-Term Care Reform*, Kaiser Comm'n on Medicaid & the Uninsured 4 (2007), https://www.kff.org/wp-content/uploads/2013/01/7684.pdf; Bernard E. Harcourt, *Reducing Mass Incarceration: Lessons from the Deinstitutionalization of Mental Hospitals in the 1960s*, 9 Ohio State J. of Crim. L. 53, 54 (2011), https://kb.osu.edu/server/api/core/bitstreams/f0c32811-ea99-5d8a-a2eb-81152c69a356/content.

The litigation impact of P&As is not merely aspirational; P&As work towards concrete, impactful solutions to problems experienced uniquely by their constituents. For example, in *T.G. v. Maryland Department of Human Services,* No. 23-cv-01433 (D. Md. Feb. 5, 2026), *B. v. Kinsley,* No. 22-cv-01046 (M.D.N.C. Feb. 17, 2026), and *R. v. Morrisey,* No. 19-cv-00710 (S.D. W.Va Mar. 13, 2025), P&As are working to protect children with disabilities from abandonment, neglect, and abuse within the foster care system. In *Disability Rights Maryland v. Seshamani,* No. 25-cv-00070 (D. Md. Feb. 18, 2026) and *Disability Rights North Carolina v. North Carolina Department of Health and Human Services,* No. 24-cv-00335 (M.D.N.C. Aug. 20, 2025), P&As seek to prevent the indefinite jail detention of unconvicted defendants with mental disabilities, without adequate treatment or due process. These examples are only representative of ongoing litigation within this Circuit; P&As nationwide also litigate to ensure fair housing, educational opportunities, voting access, safety from physical harm, access to public resources, and myriad other Constitutionally-assured rights of disabled individuals.

In jurisdictions in which P&As have been denied associational standing, the rights and interest of disabled persons have suffered the consequences. As but one example, in the aftermath of *Missouri Protection and Advocacy Services v. Carnahan*, 499 F.3d 803 (8th Cir. 2007) ("*MOPAS*"), district courts in the Eight Circuit have dismissed on standing grounds actions brought by organizations

5

seeking to vindicate the housing accessibility rights of disabled persons, as well as the statutory rights of the visually impaired. *See, e.g.*, *Metro. St. Louis Equal Hous. Opportunity Council v. Lighthouse Lodge, LLC*, No. 2:09–cv–04019–NKL, 2009 WL 1576735 (W.D. Mo. June 4, 2009); *Nat'l Fed. of the Blind of Neb., Inc. v. Outlook Neb., Inc.*, No. 8:10CV418, 2011 WL 4802643 (D. Neb. Oct. 11, 2011). *MOPAS* itself followed an earlier Fifth Circuit decision in affirming the dismissal of an action seeking to protect the voting rights of the mentally incapable. 499 F.3d at 809-10 (citing *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. Of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) ("*ARC*")).

This chill on P&A litigation in circuits denying associational standing to P&As has allowed abuses to proliferate. *Misunderstood and Mistreated*, Tex. Crim. Just. Coal., https://texascjc.org/misunderstood-and-mistreated/ (last visited Feb. 18, 2026) (detailing the abuses suffered by incarcerated individuals with intellectual and developmental disabilities, including difficulties asserting their basic rights); Sabrina Canfield, *Disability Advocacy Group Claims New Louisiana Laws Violate Voting Rights Act*, Courthouse News Serv. (July 10, 2024), https://www.courthousenews.com/disability-advocacy-group-claims-new-louisiana-laws-violate-voting-rights-act/ (estimating that one in three people in Louisiana have a disability that might prevent them from voting in person under new state voting laws); *Justice Department Finds State of Missouri Unnecessarily*

6

*Institutionalizes Adults with Mental Health Disabilities in Skilled Nursing Facilities in Violation of the Americans with Disabilities Act and Improperly Relies on Guardianship*, U.S. Dep't of Just. (June 18, 2024), https://www.justice.gov/archives/opa/pr/justice-department-finds-state-missouri-unnecessarily-institutionalizes-adults-mental-health (reporting findings that the State of Missouri violated the ADA and improperly relied on guardianship). With no associational standing, P&A organizations are hamstrung in their efforts to remedy these escalating harms. Restricting associational standing has had real and devastating consequences.

With just two votes, the panel majority has cast thousands of vulnerable individuals within the Fourth Circuit into troubled waters without a life vest. The decision casually observes that individuals with mental illness "may face obstacles" to vindicating their rights in court, Op. at 10—an understatement of epic proportions. Federal Rule of Civil Procedure 17(c), which the majority references as a substitute for P&A standing, allows for representatives, friends, or *guardians ad litem* to litigate on behalf of minors or incompetent persons. But that is true only to the extent that such representatives, friends, and guardians of those living with mental illness abound in the real world, each with the resources, will, and knowhow to litigate. They do not.

7

In those circuits where the panel majority's holding is already reality, P&As have had to expend time and resources devising workarounds to replace associational standing—or else stand by helplessly as their constituents' rights perish. These efforts come with serious opportunity costs. Disability Rights Texas ("DRTX") has reported that it has consciously avoided relying on associational standing, forcing it to identify individual plaintiffs even in circumstances where it would be enormously more efficient for the organization to bring suit as an association. In a class action involving inmates found incompetent to stand trial or acquitted by reason of insanity, DRTX was required to amend its complaint five different times until the Fifth Circuit confirmed that its individual plaintiffs met a mootness exception. *See Ward v. Hellerstedt*, 753 F.App'x 236, 242–43 (5th Cir. 2018). Without *ARC*, DRTX would not have had to expend time and resources litigating whether the unpredictable movement of individual inmates mooted their claims; the association could have brought a claim on behalf of all its affected members. DRTX also would not have been required to proceed through class action certification, which the Fifth Circuit ultimately denied, necessitating another round of briefing and argument. *See id.* at 238; *see also Ward v. Young*, No. 1:16-CV-917-LY, 2022 WL 22920960, at *1 (W.D. Tex. Mar. 29, 2022). And DRTX could have reallocated that time and those resources to other important aspects of its statutory mission.

8

Further, the challenge of establishing associational standing may dissuade a P&A from even bringing litigation at all. Disability Rights Missouri contemplated bringing suit against the Missouri Department of Corrections for violating the rights of hearing-impaired inmates. *See, e.g.*, Lexie Handlang, *Prison, Like Life, Is Not Designed for the Deaf*, Prison Journalism Project (Oct. 13, 2022), https://prisonjournalismproject.org/2022/10/13/how-i-learned-to-navitage-prison-deaf/ (relating how the Missouri Department of Corrections refused to pay for the author's cochlear implants); Michele Friedner, *Deaf and Incarcerated in the U.S.*, Sapiens (June 15, 2021), https://www.sapiens.org/culture/deaf-incarcerated/ (reporting that, in most states, policies restrict inmates to one hearing aid even if they have a medical need for two). Ultimately, Disability Rights Missouri concluded it could not bring the case, in part because it did not think it could clear the associational standing threshold. And so, that litigation simply does not exist.

In truth, if P&As cannot litigate for the rights of disabled individuals, then many of those rights will be lost, much as they were before the P&A system came into being. Such far-reaching and gutting consequences should not be triggered without the sober consideration of this full Court *en banc.*

## II.   The Panel Majority's Decision Invalidates Federal Law and Misreads Supreme Court Precedent.

Congress recognized the desperate need for organized advocacy on behalf of those with mental disabilities, and responded by passing the Developmentally

Disabled Assistance and Bill of Rights Act (Pub. L. No. 94-103, 89 Stat. 486 (1975) ("DD Act"), 42 U.S.C. §§ 6000–6001) and the Protection and Advocacy for Individuals with Mental Illness Act (42 U.S.C. § 10801 ("PAIMI Act")). Central to these reforms was the empowerment of P&As to bring suit on behalf of those with mental disabilities. 42 U.S.C. § 10805(a)(1). This empowerment is not vague or conditional, much less merely "likely," as the panel majority suggests, Op. at 10; Congress stated unequivocally that P&As "shall … have the authority" to pursue legal remedies to ensure protection of individuals with mental illness. 42 U.S.C. § 10805(a); *see also* S. Rep. No. 103-120, at 39 (1993) (no revision to statute was necessary because text was already "clear that P&A systems have standing"). By holding otherwise, the panel majority repudiates the plain language and meaning of federal statutes and fairly begs for *en banc* review. Fed. R. App. P. 40(b)(2)(D); *see also Fuld v. Pal. Liberation Org.*, 101 F.4th 190, 205 n.3 (2d Cir. 2024) (Menashi, J., dissenting from the denial of rehearing *en banc*) ("The invalidation of a federal statute is a primary reason" for further review).

The panel majority's decision not only contravenes the express text of the PAIMI Act, but also creates an outcome not called for by the Supreme Court's guidance in *Hunt*. The Supreme Court articulated a clear standard for the application of associational standing, requiring only that (a) members of the association would otherwise have standing to sue; (b) the interests sought are "germane to the

10

organization's purpose," and (c) neither the claim asserted nor relief requested requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343. The Supreme Court later also observed that, while the apple growers in question were not members "in the traditional trade association sense," they possessed certain indicia of membership, namely financing the commission through assessments, eligibility to serve on the commission, and eligibility to elect commission representatives. *Id.* at 344-45. Nothing in *Hunt* characterizes those specific indicia as mandatory or exhaustive. Yet the majority erroneously treats them as such in its analysis, concluding that in their absence, the Court simply cannot have "any real confidence" that Petitioners and Amici operate to protect the interests of their constituents. Op. at 8-9. *Hunt* dictates no such conclusion. *See, e.g.*, *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110-11 (9th Cir. 2003) (P&As pass the *Hunt* test for associational standing); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (same).

This inflexible "indicia of membership" test upon which the panel majority relies is, in reality, merely icing on the cake of associational standing, prefaced as it is within the opinion by the transitional adverb, "[m]oreover." *Hunt*, 432 U.S. at 344. The Supreme Court's *primary* reason for recognizing associational standing in *Hunt* hinges not on any particular attribute of the association's members, but on the nature and actions of the association itself. As the Supreme Court observed first and foremost, the Commission at issue in *Hunt* "perform[ed] the *functions*" of a

11

traditional membership organization, thereby earning it the same standing afforded to such traditional entities. *Id.* (emphasis added). There, the Commission engaged in various activities such as advertising or research, thus "serv[ing] a specialized segment of the State's economic community which is the primary beneficiary of its activities, including the prosecution of this kind of litigation." *Id.* So too here.

Just as in *Hunt*, and pursuant to Congressional mandate, Petitioners and Amici each serve a specialized segment of their communities and assist in advancing interests of particular salience to those communities. The panel majority's stated fear to the contrary is baseless. *See* Op. at 7 (warning against citizens who might "roam the country" in search of wrongdoing). The DD Act and PAIMI Act provide clear guardrails against actions untethered to the central purpose of advancing the interests of those with mental disabilities. P&As are required by federal law to be led by boards of directors and informed by advisory councils made up primarily of individuals who are, or who are relatives of those who are, qualified to receive mental health services. 42 U.S.C. §§ 10805(a)(6), 10805(c)(1)(B)(ii), 15044(a)(1)(A).

The panel majority's rationale in rigidly imposing the membership attributes of apple growers as a requirement for standing to represent mentally disabled individuals is nonsensical, unnecessary, and immensely harmful. Such a departure from the intentions of Congress and the guidance of the Supreme Court should not

12

be countenanced by this Court without first duly considering the implications of doing so through *en banc* review.

## CONCLUSION

The question of whether groups like Petitioners and Amici possess associational standing to sue on behalf of their constituents is one of critical importance, not just to the judiciary but to thousands of real people in need of an advocate. This Court should grant *en banc* review to consider this question with the attention to which it is due.

Dated: February 19, 2026

Respectfully submitted,

/s/ *Theodore A. Howard*

Theodore A. Howard
*Counsel of Record*
Kathleen C. Cooperstein
Myron Zhang
Wiley Rein LLP
2050 M St NW
Washington, DC 20036
(202) 719-7000
*Counsel for Amici Curiae*

13

## CERTIFICATE OF COMPLIANCE

1. This Brief in Support of Petition for Rehearing En Banc has been prepared using Microsoft Word, in Times New Roman font, with 14-point proportional type size.

2. The body of this Brief in Support of Petition for Rehearing En banc, exclusive of the case caption, title, tables, and signature block, contains no more than 2,600 words. Specifically, this Petition contains 2,596 words.

Dated: February 19, 2026                    /s/ *Theodore A. Howard*

                                            Theodore A. Howard
                                            Wiley Rein LLP
                                            2050 M St NW
                                            Washington, DC 20036
                                            (202) 719-7000
                                            *Counsel for Amici Curiae*

14