# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

No. 25-1032

---

SOUTH CAROLINA STATE CONFERENCE OF THE NAACP; DISABILITY RIGHTS SOUTH CAROLINA; JUSTICE 360,

   Plaintiffs–Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF JUVENILE JUSTICE; EDEN HENDRICK, in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice,

   Defendants–Appellees.

---

On Appeal from the United States District Court for the
District of South Carolina, Rock Hill Division, No. 0:22-cv-01338-JDA-PJG,
Hon. Jacquelyn D. Austin

---

## RESPONSE TO PETITION FOR REHEARING EN BANC

---

Robert E. Tyson, Jr.
Beth B. Richardson
Sarah C. Frierson
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com
*Counsel for Defendants–Appellees*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................1

STANDARD ...................................................................................................3

ARGUMENT ...................................................................................................4

I.      This issue is not one of exceptional importance................................5

II.     The majority correctly applied *Hunt* and wrestled with the Circuit split........9

CONCLUSION ...............................................................................................14

i

TABLE OF AUTHORITIES

## **CASES**

*A.H. v. McDonald*, 147 F.4th 270 (2d Cir. 2025), *cert. pet'n pending*.................8, 9

*Allen v. Wright*, 468 U.S. 737 (1984) ........................................................................9

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health
& Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241 (5th Cir. 1994)..................10, 12

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)......................................................5, 6

*Disability Rts. N.C. v. N.C. State Bd. of Elections*,
602 F. Supp. 3d 872 (E.D.N.C. 2022) .......................................................................7

*Disability Rts. S.C. v. Richland Cnty.*, No. 8:22-1358-MGL,
2025 U.S. Dist. LEXIS 186774 (D.S.C. Sep. 23, 2025)...........................................8

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) .....................................................9, 12

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) .....................................3

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v.
N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67 (2d Cir. 2021).....13, 14

*Hugger v. Rutherford Inst.*, 94 F. App'x 162 (4th Cir. 2004) ................................13

*Hunt v. Wash. State Apple Adver. Comm'n*,
432 U.S. 333 (1977)...............................................................1, 2, 4, 8, 9, 10, 11

*Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977)................................................1, 14

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v.
Brock*, 477 U.S. 274 (1986) ....................................................................................11

*Just. 360 v. Stirling*, 42 F.4th 450 (4th Cir. 2022)...................................................3

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................................1

*Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006)...........................................................4

*Mo. Prot. & Advoc. Servs. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007)..................12

*Moore v. Frazier*, 941 F.3d 717 (4th Cir. 2019)........................................................2

*N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472 (4th Cir. 2025) .......4

*Or. Advoc. Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003).......................8, 9, 10, 12

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)..........................................6

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
143 S. Ct. 2141 (2023)..............................................................................................4, 5

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................................4

*Timothy B. v. Kinsley*, No. 1:22-cv-1046, 2024 U.S. Dist. LEXIS 57276
(M.D.N.C. Mar. 29, 2024) ............................................................................................8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .....................................................6

*United Food & Commercial Workers Union Local 751 v. Brown Group*,
517 U.S. 544 (1996)......................................................................................................6

*U.S. ex rel. Mathews v. HealthSouth Corp.*,
332 F.3d 293 (5th Cir. 2003) ......................................................................................13

*Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011)............................7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
454 U.S. 464 (1982)......................................................................................................3

*W. Va. Advocs., Inc. v. Bd. of Educ. of Monongalia Cnty.*, 2005 WL 2076620
(N.D. W.Va. Aug. 19, 2005)..........................................................................................8

*Warth v. Seldin*, 422 U. S. 490 (1975).........................................................3, 4, 6, 14

## STATUTES

42 U.S.C. § 1983 ..................................................................................................14

42 U.S.C. § 10801 .................................................................................................1

42 U.S.C. § 10805(a)(1)(B) ...................................................................................5

42 U.S.C. § 10807(a) ..............................................................................................6

42 U.S.C. § 15043 ...................................................................................................6

42 U.S.C. § 15044 ...................................................................................................6

42 C.F.R. § 51.42(e) ...............................................................................................7

42 C.F.R. § 51.6(f) ..................................................................................................7

## RULES

Fed. R. App. P. 40(b)(2).........................................................................................4

Fed. R. Civ. P. 17(c)........................................................................................12, 13

Fed. R. Civ. P. 23 .................................................................................................12

INTRODUCTION

As the presiding judge noted, this case has been "shrouded in mystery" since the beginning. Oral Argument at 4:48–49.

But "to state a civil rights claim upon which relief can be granted under 42 U.S.C. § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States." *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977). Instead of finding juveniles in South Carolina Department of Juvenile Justice (DJJ) custody, naming (or pseudo-naming) them as plaintiffs, and trying to seek class relief,[1] Appellants chose to push this lawsuit on a novel and dubious theory of standing.

Alleging "illustrative harms," Dkt. No. 44, at 10, to "South Carolina youth," JA133–137, is anathema to a concrete and particularized injury. The majority thus correctly found neither Article III nor *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977), stretch that far, even in view of the authority Congress gave protection and advocacy (P&A) systems in the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §§ 10801 *et seq.* (PAIMI).

---

[1] *Cf. Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.").

1

Still, Appellants assert en banc review is required because the question of P&A standing is one of exceptional importance, arguing the majority's ruling abolished PAIMI. It did not. Nor did it "slam[] the courthouse doors on organizations" in toto. Dkt. No. 44, at 7. The holding was much narrower than that: P&As can participate in advocacy litigation, just not the way Appellants did here. *See* Op. at 11 ("That we answer the question" of DRSC's associational standing "in the negative does not mean protection and advocacy systems have no role to play in pursuing legal remedies for individuals with mental illness. It just means that the affected individuals need to be included as parties to the litigation.").

Disability Rights South Carolina's (DRSC) assertion of associational standing fails for several reasons.[2] As the majority found, DRSC lacks the necessary "indicia of membership." *Hunt*, 432 U.S. at 343. DRSC has no members. It only has "constituents" who do not control DRSC's organization and decisionmaking as *Hunt* requires. And while Appellants would have the Court make unjustified leaps to find unknown minor juveniles in DJJ custody somehow have a say in how DRSC operates, the majority correctly found that implausible. Context matters.

---

[2] Here, DJJ focuses only on the grounds raised in Appellants' petition. That said, Appellants' peculiar pleading fails for a host of other reasons too. *See* Dkt. Nos. 21–22; Op. at 19 ("No matter how we approach the question, we reach the same conclusion: plaintiffs are not the proper parties to bring this action."). The Court should deny the petition, but it could affirm for any of the many grounds in the record supporting dismissal. *See Moore v. Frazier*, 941 F.3d 717, 725 (4th Cir. 2019).

2

To that end, Appellants overstate the effect of the majority's ruling. Applying established Supreme Court precedent in the face of a Circuit split, the majority simply found PAIMI does not allow DRSC to bypass Article III strictures as a matter of right, and DRSC lacks the requisite indicia of membership to bring claims on behalf of unnamed juvenile constituents in DJJ custody. After all, PAIMI "does not provide" P&As "special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 487 (1982).

"By limiting who can sue, standing maintains 'the proper—and properly limited—role of the courts in a democratic society.'" Op. at 6 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The Court should deny en banc review.

## STANDARD

As "the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved," "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (cleaned up). "Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (cleaned up).

3

Appellants "bear[] the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). To show standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). For organizations, "the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or . . . it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 199 (2023) ("*SFFA*") (quoting *Warth*, 422 U. S. at 511). "When the plaintiff is not himself the object of the government action or inaction he challenges, standing is . . . ordinarily 'substantially more difficult' to establish." *N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472, 489 (4th Cir. 2025) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493–94 (2009)).

## ARGUMENT

Only four grounds justify en banc review. Fed. R. App. P. 40(b)(2)(A)–(D). Appellants focus on three, arguing the majority decided an issue of exceptional importance by purportedly ruling PAIMI was unconstitutional (it didn't), misapplied *Hunt* (though it followed *Hunt* to the letter), and conflicts with "authoritative" Ninth and Eleventh Circuit decisions (when it accords with equally authoritative Fifth and Eighth Circuit decisions). None holds water.

4

*I.*      *This issue is not one of exceptional importance.*

To start, the majority did not "strike an act of Congress," find any statute "unconstitutional," or "invalidate[] federal law." Dkt. No. 44, at 14–15. The constitutionality or validity of PAIMI has never been at issue. Rather, the question is whether DRSC has standing to litigate in the manner in which it chose to do so here. The majority correctly held it does not, and PAIMI did not abrogate the constitutional standing requirement.

As the majority acknowledged, Op. at 8–11, PAIMI gives P&As like DRSC authority to "pursue . . . legal . . . remedies to ensure the property of individuals with mental illness." 42 U.S.C. § 10805(a)(1)(B). But it did not grant associational standing to P&As in all cases. In fact, the text of PAIMI confers no express grant of standing—associational, representational,[3] or otherwise.[4]

---

[3] Appellants now use the word "representational," not "associational," in claiming the majority somehow "abolish[ed]" previously held litigation rights. Dkt. No. 44, at 16–17. Though the Supreme Court clarified "standing solely as the representative of its members" is "organizational" standing, *SFFA*, 600 U.S. at 199, the parties, the district court, and the majority and dissent have called it "associational standing" throughout this case. To the extent Appellants seek to change their theory of DRSC's standing from associational to third-party standing, they long ago abandoned that argument (and chastised DJJ for even bringing it up). ECF No. 15, at 15–16. Even so, these circumstances do not give rise to third-party standing.

[4] While Appellants invite the Court to read words into PAIMI via committee notes, "only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we

5

No other law allows DRSC to pursue legal action as it sees fit—with no regard to standing—solely by virtue of its P&A status either.  That's because, as Appellants recognize, "Congress cannot displace constitutional limitations on the jurisdiction of federal courts via statute."[5]  Op. at 11; Dkt No. 44, at 20; *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 n.22 (1976) ("When Congress has so acted, the requirements of Art. III remain: '[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" (quoting *Warth*, 422 U.S. at 501)); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Congress's creation of a statutory . . . obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III.").

Moreover, PAIMI and its regulations impose additional requirements and limitations, including exhaustion.  42 U.S.C. § 10807(a) ("Prior to instituting any legal action in a Federal or State court on behalf of a[n] individual with mental illness, an eligible system . . . shall exhaust in a timely manner all administrative

---

would risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654–55 (2020).

[5] Appellants have not once cited 42 U.S.C. §§ 15043 or 15044 as conferring standing on DRSC in this case.  Regardless, those statutes are largely similar to PAIMI and do not change the outcome.  Appellants' continued citation to *United Food and Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996), is also misplaced.  The statute there expressly conferred standing to unions to assert a particular cause of action under specific circumstances. *Id.* at 549.  PAIMI does not.

6

remedies where appropriate."). And DRSC cannot "take formal action on behalf of individuals with legal guardians or conservators, or initiate a formal attorney/client or advocate/client relationship without appropriate consent." 42 C.F.R. § 51.42(e).[6]

Critically, federal "[a]llotments" may only be used for "costs incurred by a P&A system in bringing lawsuits *in its own right* to redress incidents of abuse or neglect, discrimination, and other rights violations impacting on individuals with mental illness *and when it appears on behalf of named plaintiffs or a class of plaintiffs* for such purposes." 42 C.F.R. § 51.6(f) (emphasis added). The question of DRSC's *associational* standing has nothing to do with the former. As to the latter, there is no named plaintiff or class here. That should end the Court's inquiry.

Even so, that brings us back to the fundamental problem that has plagued this lawsuit from the beginning. It is elementary that the "appropriate way to seek judicial relief . . . is to get some actual people, name them, represent them, and indicate how they have been harmed in a concrete way." Op. at 19. In fact, that is how plaintiffs in cases Appellants cite have long asserted associational claims.[7] *See Timothy B. v. Kinsley*, No. 1:22-cv-1046, 2024 U.S. Dist. LEXIS 57276 (M.D.N.C.

---

[6] Though DRSC claims it could "take formal action," it has repeatedly stopped short of saying it had permission to file this lawsuit on any juvenile's behalf. *See* JA129.

[7] Other cases Appellants cite are inapposite. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 250 (2011) (considering sovereign immunity when one state agency sues another); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, 602 F. Supp. 3d 872, 875 (E.D.N.C. 2022) (voting case in which standing was not raised).

Mar. 29, 2024) (noting "at least one Named Plaintiff has standing and is a constituent of DRNC"); *W. Va. Advocs., Inc. v. Bd. of Educ. of Monongalia Cnty.*, 2005 WL 2076620, at *2 (N.D. W.Va. Aug. 19, 2005) (not addressing associational standing in suit on behalf of a specific minor child).

DRSC *itself* has done so when faced with the mere assertion of a lack of standing in a defendant's answer. *See Disability Rts. S.C. v. Richland Cnty.*, No. 8:22-1358-MGL, 2025 U.S. Dist. LEXIS 186774 (D.S.C. Sep. 23, 2025) (amending complaint, after answer pleaded lack of standing, to include pseudo-named plaintiffs and seek class relief). Appellants know how to plead a case properly. For whatever reason, they just refused to do so here.

In short, the majority did not decide an issue of exceptional importance. It did not undo PAIMI or overhaul P&A litigation. Nor did it abrogate an Act of Congress. It merely confirmed Article III applies as much to DRSC as any other litigant wishing to open the courthouse doors. Indeed, "[e]ven courts that read *Hunt* more broadly . . . recognize that Congress's intent to confer standing on protection and advocacy systems 'does not definitively answer the [standing] question.'" Op. at 11 (quoting *Or. Advoc. Center v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003)).[8]

---

[8] Notably, the Second Circuit—though not addressing associational standing under *Hunt* because the P&A expressly disclaimed that theory—recently found PAIMI does not provide "congressionally authorized representational standing" capable of escaping Article III's requirements. *A.H. v. McDonald*, 147 F.4th 270, 279 (2d Cir.

8

II.     *The majority correctly applied* Hunt *and wrestled with the Circuit split.*

Because DRSC admittedly is not a membership organization, *Hunt* requires an "indicia of membership" that makes it one "for all practical purposes" to establish associational standing. 432 U.S. at 344. The majority properly ruled it does not. In their petition, Appellants manifest a ruling the majority did not make. Citing the dissent, they claim the majority "erroneously applied *Hunt* like 'a rigid constitutional checklist.'" Dkt. No. 44, at 17. Appellants do not say what else the majority should have considered. And half the points in their petition were never presented to the Panel. Nor do they say how the majority misapplied *Hunt*.

Appellants want the Court to skirt the "indicia of membership" considered in *Hunt* because DRSC does not possess any. But that's not how it works. *See Allen v. Wright*, 468 U.S. 737, 751–52 (1984) ("Like most legal notions, the standing concepts have gained considerable definition from developing case law. In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases."). Even the Ninth and Eleventh Circuits considered the points from *Hunt* the majority addressed here. *See Mink*, 322 F.3d at 1111; *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999). As the majority noted, those cases also "acknowledge that the constituents of protection

_____

2025), *cert. pet'n pending*. "Congress cannot legislate away Article III's injury-in-fact requirement by conferring statutory representative status on a private party." *Id.*

9

and advocacy systems 'do not have all the indicia of membership that the *Hunt* apple growers and dealers possessed.'" Op. at 9 (quoting *Mink*, 322 F.3d at 1111).

In any event, DJJ does not dispute the "'indicia of membership' test requires a 'functional analysis.'" Dkt. No. 44, at 17. The majority did not hold otherwise. Rather, it considered each point Appellants raised that purportedly made DRSC a membership organization "for all practical purposes," *compare* Op. at 8, *with* Dkt. No. 26-1, at 17–18, and correctly found DRSC's "equivocal allegations do not suffice to show that DRSC functions as a genuine membership organization 'for all practical purposes.'" Op. at 8–9 (quoting *Hunt*, 432 U.S. at 344).

Unlike the active members guiding the decisionmaking of the association in *Hunt*, DRSC's "constituents" have no control over it. They do not "elect members," serve in DRSC roles, or "finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. DRSC thus "bears no relationship to traditional membership groups because most of its 'clients'—handicapped and disabled people—are unable to participate in and guide the organization's efforts." *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241, 244 (5th Cir. 1994) (*ARC*).

With no support in the Joint Appendix, DRSC says it is "strongly influenced by" and "accountable to its constituents." Dkt. No. 44, at 18–19. DRSC goes on to

10

cite its various governing statutes, merely restating what it "must" do to be classified as a P&A and receive funding.[9]  Dkt. No. 44, at 18–19.  But allowing "comments" on "goals and priorities," Dkt. No. 44, at 18, is a far cry from *Hunt*, where the apple growers "*alone*" "elect[ed] the members of the Commission," "serve[d] on the Commission," and "finance[d] its activities."  432 U.S. at 344–45 (emphasis added). DRSC's amorphous contacts with constituents was not enough to show it "can act as a credible and effective representative of [its constituents'] interests" "for all practical purposes."  Op. at 11 (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986)).

What is more, while Appellants and their amici want to zoom out, the standing question here does not involve P&A systems and their statutory obligations in the abstract.  It specifically relates to DRSC's associational standing (and indicia of membership) as to unknown minor juveniles in DJJ custody.  Again, context matters.

The majority correctly noted DRSC's purported constituents "need not even be aware of DRSC's existence to be counted among its constituents.  Genuine membership in an organization requires more than that."  Op. at 10.  DRSC has never alleged those unidentified juveniles have any say in how DRSC operates.  And the majority did not find "mandatory membership" "disqualif[ies] DRSC as a

---

[9] Astonishingly, Appellants now claim they alleged that conditions at DJJ "drained their resources."  Dkt. No. 44, at 10.  They did not.  *See* JA69–149.

membership organization." Dkt. No. 44, at 19. It simply pointed out it is hard to imagine how constituents can "participate in and guide the organization's efforts," *ARC*, 19 F.3d at 244, when they do not even know they are constituents.

Likewise, the majority properly addressed the Circuit split on whether a P&A has associational standing to litigate on behalf of its constituents. Op. at 9. Despite Appellants' claims, Dkt. No. 44, at 21–22, the Ninth and Eleventh Circuits[10] are no more "authoritative" than the Fifth and Eighth Circuits[11]. That the majority chose to side with the latter after considering DRSC's lack of "indicia of membership" is not grounds for rehearing en banc.

Neither is the majority's ruling requiring Appellants to use other avenues already available to them under the Federal Rules of Civil Procedure going forward. "[A]ssociational standing is not designed to empower independent organizations to act as legal guardians of the rights of vulnerable populations. Other procedural devices serve that purpose." Op. at 10 (citing Fed. R. Civ. P. 17(c)); *see also* Fed. R. Civ. P. 23.

For the first time, Appellants lean on Rule 17(a)'s more general provisions relating to a "Real Party in Interest." *See* Dkt. No. 44, at 13 & 20. In doing so, they

---

[10] *Mink*, 322 F.3d 1101; *Stincer*, 175 F.3d 879.

[11] *ARC*, 19 F.3d 241; *Mo. Prot. & Advocacy Servs. v. Carnahan*, 499 F.3d 803 (8th Cir. 2007).

overlook the more specific and controlling provision that governs "Minor[s] or Incompetent Person[s]." Fed. R. Civ. P. 17(c); *see also U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) (confirming a specific rule trumps one of more general application). DRSC is not a representative listed in that Rule with the ability to "sue" "on behalf of a minor or an incompetent person." *Id.* While Apellants' amici stereotype and claim such representatives do not "abound in the real world . . . with the resources, will, and knowhow to litigate," Dkt. No. 47-1, at 14, the record in this case proves it is no hindrance to juveniles in DJJ custody filing suit. *See* Dkt. No. 21, at 42 n.20 (collecting cases filed by individual juveniles against DJJ).

After nearly four years of litigation, and with leave to amend the complaint, DRSC ignored those devices. It refused to seek class certification or pseudo-name any juvenile who could individually sue for the violations alleged in the amended complaint by using the juvenile's "initials . . . to protect [his or] her privacy." *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 164 n.1 (4th Cir. 2004). Put simply, Appellants want all the benefits of class relief without the burdens of pursuing a class action.[12] *See* Dkt. No. 47-1, at 15 (designating normal procedures provided under the rules as "workarounds"). But the law does not play favorites.

---

[12] *Cf. Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021) (rejecting "Plaintiffs' attempt to avoid the PLRA's exhaustion requirement" by using their

At the end of the day, "[t]he federal judicial power 'exists only to redress or otherwise protect against injury to the complaining party.'"  Op. at 19 (quoting *Warth*, 422 U.S. at 499); *see also* 42 U.S.C. § 1983 (providing for liability only "to the party injured").  That is settled law, *Inmates*, 561 F.2d at 562–63, not "dicta."  Dkt. No. 44, at 11 (quoting Op. at 21 n.2 (Wynn, J., dissenting)).

CONCLUSION

"No matter how" the Court "approach[es] the question," Appellants "are not the proper parties to bring this action."  Op. at 19.  The Court should therefore deny the petition for rehearing en banc.

Respectfully submitted,

/s/ *Beth B. Richardson*
Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
March 2, 2026

---

status as organizations because "it attempts to whipsaw" the PLRA "in a manner that vitiates the Act's requirements"), *cert. denied sub nom. Green Haven Preparative v. NYDOC*, No. 21-1027 (U.S. May 2, 2022).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type-style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14 point). Excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,610 words. This certification was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

/s/ *Beth B. Richardson*
Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
March 2, 2026

15

**CERTIFICATE OF SERVICE**

I certify that on March 2, 2026, I electronically filed the foregoing with the Clerk of the Court for the United State Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Beth B. Richardson*
Robert E. Tyson, Jr. (7815)
Beth B. Richardson (9335)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
brichardson@robinsongray.com
sfrierson@robinsongray.com

*Counsel for Appellees*

Columbia, South Carolina
March 2, 2026

16